## No. 13,010.

CITY OF SHREVEPORT VS. J. H. PRESCOTT, ET ALS.

### SYLLABUS.

#### ON MOTION TO DISMISS.

The matter at issue being a question of local assessment or charge upon the property of abutting proprietors in a municipality levied upon compulsion of law alone, to pay the cost of street improvement, and without their knowledge or consent, is a *tax* in the sense of the constitutional provision, conferring appellate jurisdiction on this court.

There can be no difference, or distinction in principle, between a forced contribution for levee purposes, and a forced contribution for street improvement.

While it has ever been held with practical unanimity in numerous decisions of this court, that the portion of the cost of the paving and improvement of streets and banquettes in cities and towns, which are under the law chargeable to abutting property owners, is not a tax in the sense of the jurisdictional article of the Constitution, yet, the reason for so holding evidently is, that under the provisions of the different city charters, such assessments were based, primarily, upon petitions signed by the abutting property-owners, and, consequently, not predicated upon the *fiat* of the legislature—notwithstanding same are levied upon the theory of local benefits conferred upon the property of said abutting proprietors.

The feature which distinguishes local assessments for public State purposes from those for city street improvement, is, in all laws, except the one under consideration, the assent of the property owner.

This court affirms the proposition announced in State *ex rel*. Hill vs. Judges, 46th Ann., 1292, to the effect that, "the use of the words 'all cases' and of " the words 'any *tax*, impost or toll *whatever*', clearly indicates, on the part " of the framers of the Constitution, an emphasized intention to give to the " terms tax, toll and impost, the widest meaning to which they are suscept- " ible, and to allow every citizen to have submitted to the test of legality " and constitutionality, by the highest court of the State, any charge upon " his property imposed by the State, or its subordinate political agencies. " when claimed to be legally and constitutionally imposed by them in aid of " governmental purposes, whether extending over the whole State, or of par- " ticular localities;" and further, that "it is manifest that the word *tax* " in this part of the Constitution, is used in its largest sense.   After the " words describing the jurisdiction of this court as extending to all cases " involving the legality or constitutionality of any tax, toll or impost, there " is added the word 'whatever'; *i. c.*, whatever the *character* of that tax, " toll or impost."

The present controversy comes clearly within the reason and spirit of that decision, because the cost of the local assessment herein involved, is a tax within the intendment of the jurisdictional article of the Constitution.

City of Shreveport vs. Prescott et als.

ON THE MERITS.

This suit involves an interpretation of an ordinance of the city of Shreveport, which requires that abutting property holders throughout the length of a street that has been paved shall pay two-thirds of the cost of same—each one paying in proportion to frontage—that the street railroads shall pay in proportion to the space occupied by their road-bed, compared to the width of the street, and that the city shall pay the remainder—this assessment having been made in pursuance of Act 10 of 1896, and wholly without the assent of the abutting property holders.

The ordinance is founded upon the supposed authority that is conferred by the second section of said act, which provides, that abutting owners shall pay two-thirds of the entire cost, and the corporation shall pay one-third from its general resources; and *provided* that where a railway-bed or track occupies a part of the street, it shall pay in proportion to the space occupied by its roadbed, compared with the width of the street.

Finding upon comparison of the city ordinance with the statute that the former has transposed the terms of the latter by stating (1) the share of the abutter to be two-thirds; (2) that of railroad companies in proportion to the space occupied by them: (3) that the city should pay the remainder; whereas the latter states (1) the share of the abutter shall be two-thirds, (2) the city one-third, and (3) provided that a street railway occupies a portion of the street, it shall pay in proportion to said space—same are irreconciliable.

Entertaining the view that the ordinance is not in keeping with the terms of the statute, the true import of which is to require the portion of the cost due for street improvement by railroad companies to be first deducted from the total amount, and the remainder distributed between the abutters and the municipality, two-thirds to the former and one-third to the latter. same is declared null and void.

The uniform current of judicial opinion affirms the principle that the right of occupancy of a portion of the streets of a municipality by a street railway corporation, is property which is benefited by a street improvement to the extent of the space occupied by its roadbed and tracks, which renders same liable for its proportionate share of its cost just as the property of abutting property owners is liable. That the railway company using the streets for the operation of its cars, is in duty bound to pay for the work on the streets which its track alone makes necessary—that is to say, all expense for that portion of the work lying between the exterior rails of the tracks of the road, and for a distance of two feet from and exterior to the track on each side thereof.

That in no case can any portion of the cost of such improvement be attributed to, or assessed against the abutting property owners.

That when a statute or municipal ordinance makes provision for the assessment of a street railway corporation for the pavement of such space as its tracks and roadbed occupy, such provision is mandatory, and any portion thereof which is put upon the abutting property owners is illegal and void.

The very object and aim of such a statute as the act in question, is to relieve the municipality and abutting owners, proportionately, from defraying any portion of the cost incident to the part of the street improvement, covered by the tracks of a street railway.

The space occupied by a street railroad company is a matter of proof to be ad-

City of Shreveport vs. Prescott et als.

ministered and determined in some proceeding, contradictorily between all parties in interest—the municipality, the abutting property owners and the street railway companies—and an ordinance which arbitrarily fixes said space without a contradictory hearing, can not be sustained as valid.

APPEAL from the First Judicial District Court for the Parish of Caddo. *Land, J.*

*E. H. Randolph,* City Attorney, for the Plaintiff and Appellee.

*Thomas C. Barret, J. Henry Shepherd* and *Allen Rendall,* for the Defendants and Appellants.

Argued and submitted January 26, 1899.
Opinion on motion to dismiss handed down April 17, 1899.
Opinion on the merits handed down May 15, 1899.
Rehearing refused June 29, 1899.

## On Motion to Dismiss Appeal.

The opinion of the court was delivered by

WATKINS, J. The motion to dismiss is grounded on the want of jurisdiction of this court, *ratione materiae*—the amount in dispute being less than two thousand dollars.

The contention of the defendants and appellants is, that this court has jurisdiction, for the reason, that the question at issue is, the constitutionality and legality of an assessment, or forced contribution for street improvement, which was levied by compulsion of law, and without the consent of the abutting proprietors.

That the assent of the property owners was, in no way, required, and that they had no voice whatever in the matter.

That the law under which the proceedings complained of were taken, authorized the city council to levy the charge, by simple ordinance, without any precedent application of the property owner. Act 10 of 1896.

Their contention further is, that the ordinance of the city council imposes a tax or local assessment upon the property holders, on three streets, which are included in the paving contract, aggregating seventy or eighty thousand dollars in value—the portion of no one of the taxpayers amounting to a sum equal to two thousand dollars.

The foregoing contentions are predicated upon the principles announced in State *ex rel* Hill vs. Judges, 46th Ann., 1297; and Railroad vs. Sheriff, 47th Ann., 706. The purport of the contention of appellants' counsel is, that such a local assessment is a tax within the jurisdictional sense of Article 81 of the Constitution of 1879, and Article 85 of the Constitution of 1898.

On the other hand, the contention of appellee's ·counsel is, that the principles announced in Fayssoux vs. Denis, 48th Ann., 850, are different from those announced in the decision relied upon by appellants' counsel, and should control; but appellants' counsel insists that the same are not in conflict, for the reason, that the assessment under discussion in Fayssoux vs. Denis was predicated upon the assent of the property holders, and that the proceedings for its assessment were inaugurated by them.

That in such case, the assessment not having been levied solely and alone on the authority of law, either by an ordinance of the city council, or an act of the legislature, it does not possess the characteristics of a tax, even in a jurisdictional sense; but the one in question here, having been levied by compulsion of the law alone, is a forced contribution, and a tax within the contemplation of the aforesaid articles, defining the jurisdiction of this court.

This suit is one ·brought by the City of Shreveport, for the use of the street contractor, against the defendants, who refuse to pay the amount charged to them for paving the street with vitrified brick, in front of their respective properties; and the amount claimed from each is less than two thousand dollars ($2000.00), and in the aggregate does not exceed five hundred dollars ($500.00), against all three defendants.

The petition alleges, that in pursuance of law, the city entered into a contract with one Talbot, after observance of all due and legal formalities, to pave Texas street, part of Common street, and Texas avenue, up to Jordan street, at the rate of $1.87 per square yard. That said paving provided for in the contract had been completed, and that the city has accordingly levied local assessments on the abutting properties, so as to aportion two-thirds of the contract price on the said real estate, on the basis of their respective frontages, according to law; and that the portion due under said assessment charged against the defendant, Prescott, is $408.27, less $324.13, already paid; that against J. S. Rendall, is $415.85, less $333.18. al-

ready paid; that against Mistress H. Simon, is $411.40, less $212.00, already paid.

The further averment of the petition is that the local assessments against said properties have been duly recorded, and are privileged on same, and against the owners thereof; and that the partial payments were made by said defendants as aforesaid; but they refuse to pay the balance, on the ground that the law does not charge their properties to the extent of two-thirds of the contract price, and that the city council has no authority to levy a local assessment to that extent on said properties.

That said amounts are justly due, and for which they pray judgment against the defendants, with recognition of privilege on the said properties, and for the enforcement thereof.

The parts of the appellants' answer, responsive to the motion to dismiss, are, that "they allege that certain .of the property holders on Texas street, relying on representations made by the city officials that the assessments made against their property on account of .this improvement, were only such as the law contemplated and allowed, have paid same; but the respondents and other property holders * * * object to the amount claimed by the city as excessive, exorbitant and unwarranted by law and oppressive. * * * * *. They show that the city council and city officials have put a forced, strained and illogical construction or interpretation upon the paving statute, aforesaid, claiming under it the right to appropriate to the city, as a credit on the one-third of the expense of paving, which the law declares it must pay, the amount exacted from the street railway company, whose tracks occupy the several streets."

Respondents aver, there is no warrant in law for this; on the contrary they shows that the language of the statute is plain and clear, to the effect that where street railways occupy a part of the street paved, two-thirds of the costs of improvement is to be borne by the abutting property owners, and the railroad; the latter paying in proportion to the space it occupies, compared with the width of the street.

And, "that this leaves the city (as the law says it shall) one-third of the expense of the improvement. * * * *

"That the city officials decline to accept either of these interpretations, and arbitrarily demand more .than the law permits to be ex-

acted from the property owners. That respondents, and a large number of property holders similarly situated resist this exaction; and that not more than one-third of the abutting property owners on the three streets included in the paving contract, have paid the amount demanded by the city; and those who have paid it, did so in error.

\* \* \* \* \* \* \* \* \* \* \* \*

"They show further, that the city council of Shreveport, by ordinance, has reduced, or attempted to reduce, the space for which the railroad company must pay, from 16 to 9 1-4 feet; and they allege, that this can not be done at the expense of abutting property holders on said streets."

Lastly, "respondents aver the unconstitutionality and illegality of the statute under which the city claims to act; and of the city ordinance under which these pretended assessments were made—the same contravening the provisions of Articles 1, 6, 48, 203, 209, 218 and other articles of the Constitution of 1879; and, because this is an attempt to enforce a system of local improvements without reference to the assent of property owners, for whose benefit the paving is supposed to be done."

Therefore, the question is, whether this court has, or can, entertain jurisdiction of this case.

The language of the Constitution relied upon, is, that the appellate jurisdiction of this court, shall extend, "to all cases in which the "constitutionality, or legality of any tax, toll or impost whatever " \* \* \* \* shall be in contestation," etc. Art. 81, Const., 1879.

The language of the present Constitution is the same. Article 85, Constitution of 1898.

Hence; the only question to be determined is, whether the local assessment sought to be enforced is *a law*, within the sense of that constitutional provision.

The legislative act upon which the ordinance of the City of Shreveport is founded is, as its title declares, one to empower cities and towns (the City of New Orleans excepted), having a population exceeding ten thousand, to pave, or otherwise improve the streets and alleys thereof, and to levy and collect special taxes and local contributions on real estate abutting the same; to defray part of the cost of such work of improvement, etc.

Section one provides, that the municipal authorities of any such town or city "shall have the power to pave, plank, gravel, macadamize or otherwise improve the streets and alleys, or any part thereof, * * * * and shall have the power to levy and collect special taxes on the real estate abutting the street or alley to be improved for the purpose of defraying a part of the cost of such work of improvement."

Section 2, declares, "that the owners of real estate so abutting, shall pay two-thirds of the entire cost of such work or improvement, and the corporation shall pay one-third out of its general resources, *provided* that where a railway bed and track occupies a portion of the street, it shall pay in proportion to the space occupied by its road-bed, compared to the entire width of the street."

Section 3, provides, "that whenever the city council of cities herein described shall resolve to pave or improve any portion of streets or alleyways not less than one block, or any street or alley, it shall pass an ordinance calling for bids for the work, of which ten days' notice shall be given in a newspaper, published in said city, and shall let the contract to the lowest responsible bidder * * * *; and after the contract has been awarded, the council shall provide, by ordinance, for an assessment on real estate abutting the street or alley, and on railroad tracks as aforesaid, a portion whereof is to be paved or otherwise improved, in such manner as to apportion two-thirds of the contract price on the basis of the respective frontage of the real estate so abutting, and on the railroad track, in the proportion as set forth in section two hereof."

Section 4, provides, "that the sum assessed against said real estate and railroad track and road bed, shall be due and collected within ten days after the completion of the work and its acceptance by the mayor and city engineer; and if not paid within the said ten days, the municipal authorities shall have the power to proceed by suit against the said owners and said real estate and railroad company and track to collect the *delinquent assessment,* and the said municipality shall have a privilege on said property or properties, to secure the payment of the sum assessed, * * * * which privilege shall be a first privilege over all other claims, except taxes."

From the provisions of the foregoing statute, it is perfectly clear, that the municipal authorities of the cities and towns specified, were given plenary power to pave, or otherwise improve, the streets

and alleys thereof, and to charge the abutting proprietors two-thirds of the entire cost of such work of improvement, without, in any way, consulting their wishes, or, obtaining their consent either by petition or at a special election held for the purpose.

This statute is *sui generis,* and differs in that material respect from statutes in regard to street improvement generally.

Therefore, it is equally clear that the point is well taken by appellants' counsel, that the street paving, and the resulting local assessment on their properties, was by the operation of the statute and the ordinance exclusively, and without the concurring assent of the abutting proprietors.

We make the following quotations from the brief of defendants' and appellants' counsel, as best and most accurately stating the grounds of their resistance to the motion to dismiss their appeal, viz.:

"Undoubtedly, what is involved in this suit, is a charge upon "property, a *forced contribution,* levied by compulsion of the law. "The abutting property owners had no voice whatever in the matter. "*Nolens volens,* an enormous exaction, a heavy imposition, is assessed "against them and their property. It is for a public purpose, viz.: "the paving of a public street, the main thoroughfare of the city, "two and a half miles long. The evidence shows the work is to cost "about $120,000; more than two-thirds of which the city seeks to "impose upon the abutting property. This is a test case. Its de-"cision affects the most valuable property in the city and hundreds "of taxpayers, many of them with small holdings, unable to meet "the exaction.

"And yet we are told it is not a tax, and we can not have re-"viewed by this high court, that part of the imposition challenged "for illegality:

"The fact that the assessment is levied upon abutting property "upon the theory of supposed benefits, does not make it any the less "a tax. The hand of the law reaches out and enforces the exaction, "determining, alone and independent of the property owner, that the "improvement benefits his property, and he must pay. This is abso-"lutely as much 'a tax,' in the broad sense of that term, as it is "possible for anything to be.

\*          \*          \*          \*          \*          \*          \*          \*

"The State Constitution declares, that the appellate jurisdiction

" of the Supreme Court shall extend 'to *all cases* in which the con-
" stitutionality or legality of *any tax,* toll or impost *whatever* shall
" be in contestation, whatever may be the amount thereof.'" Const.
1879, Art. 81.  Const. 1898, Art. 85.

"Observe the broad scope of the words, *any tax whatever; any im-*
" *post whatever.*

"They include any and every exaction, charge, contribution, bur-
" den, or tribute levied on the citizen, or his property.  Whenever
" money or funds are demanded by the law from the citizen, or
" assessed against his property, no matter what the form or method
" of taxation; whether for general purposes or for local benefits, the
" language of the constitution is intentionally made broad enough
" to cover it, and this Honorable Court may review its constitutional
" and legal features."

Again:

"Whatever the constitutions of other States may have intended,
" or not intended by the words tax or taxes, as used in them, it is
" clear that when the constitution of Louisiana came to define the
" appellate jurisdiction of this court, it used language of the most
" latitudinous significance, in vesting this court with the right of
" review of all cases where the legality of any kind of tax, or tribute,
" or exaction, or burden placed upon the citizen or his property is in
" contestation, without regard to the amount in dispute."

After having made an examination and analysis of the pertinent
decisions of this court in regard to its constitutional jurisdiction in
cases involving the legalty of local assessments made by authority
of the general assembly for levee purposes, counsel say:

"There can be no difference or distinction in principle between
" *forced contributions* for levee purposes, and *forced contributions* for
" other improvements.  All alike, to be valid, must be for *public*
" *purposes.*

"Where the charge is put upon the property of the citizen by the
" law, where it is in this sense a *forced contribution,* where he has
" no voice in the matter, where it is done without asking his consent,
" or that of his fellow-abutting property holders, where it is a levy
" resting on the *compulsion of the law,* operating through the State
" government, or that of one of its political sub-divisions, it is no
" longer an open question that this court has jurisdiction; that it

" comes within the meaning of the words, 'any tax, toll or impost
" whatever,' that it is a tax, or impost in this sense.

" The *forced contribution* in the instant case is for a public pur-
" pose, to-wit: The paving of a public street in the City of Shreve-
" port."

*Per contra*, the contention of the plaintiff's counsel is tersely put
in the following quotation from his brief, viz:

"Therefore, the only inquiry is, is this a suit, or proceeding to
" enforce a tax?

"A suit to recover from abutters their proportion of the cost of
" paving a street has never been held to be a suit to enforce a tax
" On the contrary, it has always been held in the negative, and in
" the face of numerous decisions of this court (one of them in 1896),
" appellants have held up the collection of the judgment against them
" by appealing here, and hence, we ask a dismissal with penalty as
" prayed for in motion to dismiss. There is an unbroken line of
" opinions of this Honorable Court from 48 A., 852, back into the
" Robinson Reports, declining to take jurisdiction in such suits.
" unless the amount in dispute was more than $2,000.

"The latest authority, 48 Ann., 852, should put such question at
" rest."

The decisions of this court have repeatedly held that local assess-
ments were not taxes *eo nomini,* that is, in the ordinary sense of that
term as it is employed in the constitution; but that they are taxes
in the more general signification that they are a charge put upon
property by authority of the law-making power.

The general distinction that is taken between taxes and local
assessments, by courts and authors, is, that the *former* are forced
contributions, levied by the government alike upon all property,
for the purpose of raising revenue for the support of the government,
without reference to the benefit that the taxpayers may derive there-
from; while the *latter* are, also, forced contributions which are levied
by the government, but upon certain particular property, and with
a view of raising revenue for certain designated purposes, having
direct reference to the special benefits that will enure to the property
thus taxed.

It will serve no useful purpose to examine and analyze those
authorities.

It has, also, been held, with practical unanimity, in numerous decisions of this court, that while the portion of the cost of the paving and improvement of streets and banquettes in cities and towns which are, under the law, chargeable to abutting property owners, are local assessments, yet they are not taxes in the sense of that article of the constitution which confers appellate jurisdiction on this court; but the reason for so holding evidently was, that under the provisions of different city charters, such assessments were based, primarily, upon petitions signed by such abutting property owners, and, consequently, not predicated upon the fiat of the general assembly, notwithstanding same were levied upon the theory of local benefit conferred upon the property of abutting proprietors.

And that is the theory of our opinion in Fayssoux vs. Denis, 48th Ann., 850.

"The tax," says our opinion, "is levied for the public benefit; "the local assessment for the improvement of the property of the "individual, and payment is exacted solely on the theory, that he "receives the benefit, not participated in by the community, at "least, to some extent.

"Taxes are levied, too, solely by virtue of the law conforming to "the constitution.

"No system of local improvements is enforced, without some "reference to the assent of the owner, for whose advantage the "banquette or street paving, or other supposed improvement is "furnished.

"It is true the assent of the majority or other proportion of the "owners, fixed by law, is made to bind those who object. But, still, "there is the substitution of the will of the majority, for the con-"sent of all, or other similar requirement to make binding the local "assessment.

"In this respect, the local assessment differs from the public tax, "effective, simply, and only, because the constitution authorizes, and "the law directs it.

"Under the city charter, the paving must be petitioned for by "property owners; and, if, after due publication, it is not opposed "by a majority, it is ordered by the council. While, therefore, the "*local assessment is deemed a tax,* it is distinguished from the "*public tax* by marked differences. *The tax, as usually understood,*

120

"*is levied by the law alone,* not for the individual, but for the " public good.

"*The local assessment is enforced by the law, but based on the* " consent of the owners to the extent required by the statute, and is " levied for the advantage, the law presumes, of those on whose " property the assessment is imposed."

The local assessment under consideration, was levied by the city of Shreveport, but by the authority of a legislative enactment, which required no consent on the part of property owners residing upon the streets to be paved.

In this important particular, that statute differs from the provisions of the charter of the city of New Orleans which controlled the decision of the case of *Fayssoux vs. Denis;* and in this respect, that statute under consideration is very closely assimilated to the statutes governing local assessments for levee purposes.

The feature which distinguishes local assessments for public, State purposes, from those for city, street improvement, is the assent of the property owner—same being a *sine qua non* to the latter, but not to the former.

In State *ex rel* Hill vs. Judges, 46th Ann., 1292, we had under consideration the legality of a special assessment levied for the benefit of certain lands, which were subject to inundation and overflow; and the respondents having declined to take jurisdiction of an appeal which involved the determination thereof, *mandamus* was applied for to this court to compel them to examine and decide the same.

In the course of our opinion we said, the Chief Justice speaking for the court:

"We are of the opinion that the cases involve the issue of tax and illegal tax *vel non,* and that that is an issue which has to be passed upon and determined by this court, and not the Court of Appeals."

And, then quoting the eighty-first article of the constitution, the opinion proceeds thus, viz:

"We are of the opinion, that the use of the words '*all cases,*' and " of the words '*any* tax, impost or toll *whatever,*" clearly indicates " on the part of the framers of the constitution an emphasized in- " tention to give to the terms tax, toll and impost the widest mean- " ing to which they are susceptible, and to allow every citizen to have " submitted to the test of legality and constitutionality by the highest " court of the State, *any charge upon his property imposed by the*

" *State or its subordinate political agencies,* when claimed to be
" legally and constitutionally imposed by them in aid of govern-
" mental purposes, whether extending over the whole State, or over
" particular localities.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"The fact that charges imposed by the State or its subordinate
" agency, may differ and vary from each as to the particular cir-
" cumstances and conditions under which they may be imposed, and
" the extent of resulting effect of their imposition, does not prevent,·
" for the purpose of the special question of the jurisdiction of·
" courts, in dealing with them, their falling in an extended sense
" under the terms 'tax, toll or impost.'

"It is for this court, and it alone, finally to determine, whether
" charges imposed upon the property of the citizens are, or are not
" taxes, imposts or tolls; and, if so, whether they are legally and
" constitutionally imposed.

"As cases arise under differing circumstances and under differing·
" pleadings, we will determine whether the particular case falls
" within our exclusive, appellate jurisdiction for decision, or not."

In the same case, Mr. Justice Miller very strongly emphasized the
doctrine, which the Chief Justice. announced, in a concurring opin-
ion in the following language, viz:

"The jurisdiction of this court under the constitution extends to
" all cases in which the constitutionality or legality of any tax, toll
" or impost whatever, is involved. It is manifest the word *tax* in
" this part of the constitution *is used in its largest sense.* After the
" words describing the jurisdiction of this court as extending to all
" cases involving the legality or constitutionality of any tax, toll or
" impost, there is added the word, 'whatever,' *i. e.,* whatever *the char-*
" *acter* of that tax, toll or impost."

This. court having under consideration the same question in·
Railroad Company vs. Sheriff, 47th Ann., 708, used this language,
viz:

"The jurisdiction of this court is full and complete. The purport
" of our opinion in State *ex rel* Hill vs. Judges, 46th Ann., 1292, was
" that, notwithstanding forced contributions for levee purposes are
" treated as local assessments not subject to the rule of constitutional
" uniformity applicable to general taxation, *they are taxes,* under Art.
" 81 of the constitution, conferring on this court appellate jurisdic-

" tion in all cases involving the constitutionality or legality of any
" tax, impost or duty whatsoever."

In State *ex rel* Tax Collector vs. Court of Appeals, 49th Ann.,
1221, we held, that the constitutional provision in question "embraces,
" indeed, the whole scope of remedial legislation pertinent to the
" subject of taxation."

All of the foregoing decisions are entirely consistent, and all of
them equally favor the constitutional right of this court to assume
appellate jurisdiction of all cases in which is involved *any* tax, toll
or impost *whatever*, when same is levied in pursuance of the law
alone.

Considering this new departure which has been taken by the
legislature, (1) whereby street paving is to be carried on by *ex parte*
proceedings, inaugurated by municipal authority alone; (2) that, by
an ordinance of the municipality, ten-fifteenths of the cost thereof
is put upon the abutting property owners, without either their knowl-
edge or consent, and, as defendants insist, in violation of the enabling
statute; (3) that, by ordinance, also the remaining five-fifteenths of
the cost is to be apportioned between the city and certain street rail-
road corporations, in like violation of said statute; and (4) that,
while the proportionate shares of the several defendants of said cost
are comparatively small, the total amount charged against them
and other property owners similarly situated, and whose rights would
be necessarily affected by the interpretation which this court shall
place upon said ordinance and law, aggregate an amount in excess
of one hundred thousand dollars—the necessity for this court to en-
tertain appellate jurisdiction of this cause becomes strikingly ap-
parent.

Viewing our jurisprudence in this light, we are of the opinion that
we should entertain jurisdiction of this cause; and being of this
opinion, the motion to dismiss the appeal is denied.

### ON THE MERITS.

The question for consideration in this court, is the validity
and legality of the ordinance of the City of Shreveport, under
which the local assessment for street improvements is sought
to be enforced against the defendants in this suit.

Having assumed jurisdiction of the matter in controversy, which

is below the lower limit of the appellate jurisdiction of this court in amount, the question is one of law alone.

Therefore, we can deal with no question of evidence that does not appertain strictly thereto.

From the city ordinance in question, we make the following extracts, to-wit:

"Shreveport, May 27th, 1897.

"Whereas, the City of Shreveport, by ordinance of date January 14th, 1897, called for bids, to pave with vitrified brick, pursuant to specifications on file in the comptroller's office, Texas street from Commerce to Common streets; Common street from Texas street to Milan, and Texas avenue from Milan street to limit of said avenue; and

"Whereas, due and legal notice by publication was given for calling for bids; and

"Whereas, the lowest bidder was James F. Talbot, of Chicago, Illinois, to do the above described work with No. 1 Coffeeville vitrified brick, and in accordance with the aforesaid specifications (hereto annexed) at $1.87 per square yard, with brick, as per sample submitted, and

"Whereas, the said bid was accepted by the city council on May 6th, 1897;

"Now, in pursuance thereof, the following agreement is hereby entered into between the said city and the said Talbot, contractor:

"That said contractor having given satisfactory bond, hereby agrees to pave with the aforesaid No. 1 Coffeeville brick; and pursuant to the aforesaid specifications, except as necessary to be modified by the city, etc.

　＊　　＊　　＊　　＊　　＊　　＊　　＊　　＊

"The price of the aforesaid work complete, is hereby fixed at $1.87 per square yard, which the contractor is to receive as follows:

"The abutting property holders throughout the whole limit of the streets and avenue paved, are to pay two-thirds of the same area at the rate of $1.87 per square yard, each one paying in proportion to frontage, according to section 3, Act 10 of the statutes of Louisiana for 1896; and the Shreveport City Railroad, and the Shreveport Belt Railroad companies are to pay (each one) in proportion to the space occupied by its roadbed, compared to the entire width of the street, and under its contract with the city of Shreveport, hereby fixed at 12

feet from the corner of Spring and Texas streets throughout the length of aforementioned streets and avenues, besides its *pro rata* due for paving intersections, pursuant to section 2 of the aforesaid act, and in accordance with its contract with the city.

"The balance of the cost of paving shall be paid by the city of Shreveport; and, in order to pay therefor, all funds on hand arising from bridge collections, and that may accrue from such source pending this work, and not otherwise appropriated, are hereby set apart and appropriated by the city; also, any other monies on hand, or that may accrue during this work, and not otherwise appropriated to alimony and fixed charges; also, the eight notes of the St. Louis & Southwestern Railway Company for $500 each, due respectively, August 23rd, 1898, and at intervals of one year thereafter, etc."

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"It is further understood and agreed, that for all work on Texas street, the amounts due by abutting proprietors under Act 10 of 1896, shall be paid for in cash on the acceptance of the work; but, for the portion due by the Shreveport City Railway Company throughout the length of its track in the city of Shreveport, and the portion due by the Shreveport Belt Railroad Company, only twenty *per cent.* shall be demandable in cash, and the balance to be paid in equal installments of one, two, three, four and five years, as provided for in section 4 of Act 10 of 1896; and the proportion of cost of paving chargeable to abutting owners on Common street and Texas avenue, shall be on the same basis, that is, twenty *per cent.* cash, and the balance in one, two, three, four and five years, etc.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"The said city obligates itself to pass proper ordinances, levying assessments on the realty and the railroads aforesaid, according to Act No. 10 of 1896; and hereby transfers to, and subrogates said Talbot to all the rights and interest in the assessments already resting on said realty and railroads, and to be made hereafter, with all privileges accruing on same, and agrees to transfer to him, the aforesaid certificates, all of which transfers and subrogations are accepted by the said contractor in full settlement and payment of the portion of the costs of paving, chargeable, under the law, to said railroads and abutting proprietors, etc."

From the foregoing provisions of said ordinance, it clearly appears, that the abutting property holders have been assessed for two-thirds

of the entire cost of the street improvement, according to the frontages of their respective properties; that the street railroad companies have been assessed according to the space occupied by their roadbeds, compared to the entire width of the street; and, that the residue of the expense is charged to the city, and payable from its general revenues.

The defendants deny the legality of the ordinance, and insist that it does not conform to the terms of the law; and they contend, that the exaction demanded of them is illegal, and can not be enforced.

The contention of the defendant is, "that the statute in question " authorizes the city to pave the streets, and directs that the cost of " such improvement shall be borne in the proportion of two-thirds " by the property holders on the street, and one-third by the city.

"Where a street railway occupies a part of the street, the law de- " clares it shall pay in proportion to the space it occupies, compared " to the width of the street.

"No word of authorization appears anywhere, directly or indirectly, " expressly, or by reasonable implication, that what the railway pays, " the city is entitled to credit on its one-third of the expense.

"To permit the city to do this, would be to reduce the amount the " city has to pay for such improvement to about one-fifth, or one- " sixth of the total expense; whereas, the law declares, it must pay " one-third of the cost.

* * * * * * * *

"The law is susceptible of two constructions only; both of which " the city council disregarded.

"One is, that two-thirds of the entire cost of paving a given block " on Texas street, is to be borne by the property taxpayers *and the* " *street railway,* and one-third by the city.

* * * * * * * *

"The other construction of which the act is susceptible, is based on " section 2, and is as follows, to-wit:

"Find the total cost of paving a block; then ascertain what the " railway owes in proportion to the space of the street it occupies; " deduct this sum from the total expense, and the remainder is to be " borne by the abutting property owners and the city, in the propor- " tion of two-thirds by the former, and one-third by the latter."

The terms of the statute are as follows:

"That the municipal authorities * * * shall have the power

" to pave, plank, gravel, macadamize, or otherwise improve the streets
" and alleys, or any part thereof not less than one block, within the
" corporate limits, and shall have power to levee and collect special
" taxes or local assessments on the real estate abutting the street or
" alley to be improved, for the purpose of defraying a part of the cost
" of such work of improvement."

Section 1, Act 10 of 1896.

It further provides:

"That the owners of real estate so abutting, shall pay two-thirds of
" the entire cost of such work of improvement, and the corporation
" shall pay one-third from its general resources, *provided,* that where
" a railway bed or track occupies a portion of the street, it shall pay
" in proportion to the space occupied by its roadbed, compared with
" the entire width of the street."

Section 2 *Id.*

It further provides:

"And after the contract has been awarded, the council shall provide
" by ordinance for an assessment of all real estate abutting the street,
" or the alley, and on railroad tracks as aforesaid, a portion whereof
" is to be paved or otherwise improved, in such manner, as to appor-
" tion two-thirds of the contract price on the basis of the respective
" frontage of the real estate so abutting, and on the railroad track, in
"the proportion as set forth in section 2 hereof." *Id.,* Sec. 3.

The question of the validity of the city ordinance must depend
principally upon the construction to be placed on the provisions of
the second section of the statute; and that depends upon the effect to
be given to the part of the sentence which follows the word, *"pro-
vided,"* and which is as follows, to-wit:

"That where a railway bed and track occupies a portion of the
street, it shall pay in proportion to the space occupied by its roadbed,
compared to the entire width of the street."

If that *proviso* was intended by the General Assembly to relate to
the entire portion of the section preceding it, there is great force in
the contention of the defendant; as it leads to the supposition that
the portion of the cost that the railway is to pay, is to be deducted
from the *entire cost* of the improvement—thus leaving the residue to
be apportioned between the city and the abutting property owners, as
indicated in the said preceding part of the section.

The language of the *proviso* in section three, to-wit, that "after the

contract has been awarded, the council shall provide by ordinance for an assessment of all real estate abutting the streets or alleys, and on railroad tracks as aforesaid, a portion thereof to be paved or otherwise improved, in such manner as to apportion two-thirds of the contract price, on the basis of the respective frontage of the real estate so abutting, and on the railroad track in proportion, as set forth in section two hereof", seems rather to strengthen the aforesaid conclusion than otherwise, as it declares, that the city "is to apportion " two-thirds of the contract price, on the basis of the respective front- " age of the real estate so abutting, *and* on the railroad track, in the " proportion as set forth in section 2."

The district judge entertained a different view of the statute, and maintained the legality of the ordinance.

We have made the following extracts from his opinion, as illustrating his reasons for judgment, as follows, to-wit:

"The cost of the work so far has been paid as follows: two-thirds " by the abutting real estate, and one-third by the railway companies " and the city, the company paying a proportion of the entire cost, " based on the space occupied by the tracks, estimated at nine and " five-twelfths feet, compared to the entire width of the street, and " the city paying the remainder.

"For the sake of illustration, assuming the paving of a block in " length of the street costs $5,000.00, and that the tracks of the rail- " way company occupy one-fifth of the width of the street, the city " contends that the real estate abutting owes two-thirds of $5,000.00, " that is, $3,333.33 1-3; and the railway company owes one-fifth of " $5,00.00, that is, $1,000.00; leaving a balance of $666.66 2-3 to be " paid by the city.

"Defendants contend, that the real estate abutting and the railroad " company are to pay two-thirds of the entire cost; that is, $3,- 333.33 1-3, and the city the other one-third, that is, $1,666.66 2-3.

"Under this theory, the railroad is charged with one-fifth of two- " thirds, and the real estate with four-fifths of two-thirds.

"Defendants further contend that the only other interpretation ad- " missible is, first, to charge the railroad with one-fifth of the entire " cost, that is, $1,000.00, and then apportion the remainder on the " basis of two-thirds to the abutting owners, and one-third to the city.

"Under this contention, the $5,000.00 would be apportioned as fol- lows:

"Railroad $1,000.00; city $1,333.33 1-3, and real estate $2,666.66 2-3.
"The result to the real estate is the same in both cases.

*        *        *        *        *        *        *        *

"The solution of the question before the court, hinges on the in-
" terpretation or construction of Act 10 of 1896, and more especially
" on sections 2 and 3."

The judge then quotes the language of the sections 2 and 3, and
refers to Act 127 of 1890 as the foundation of the act of 1896. In
aid of the construction he has placed upon the latter act, he says:

"The Act of 1896 goes beyond this provision of the Act of 1890, and
" imposes a local assessment, also, on railroads occupying a portion
" of the street.

"The general rule is the same in both acts, and under the act of
" 1896, it is admitted that all real estate abutting on streets, and not
" occupied by railroad tracks, is subjected to an assessment of two-
" thirds of the entire cost.

"The construction contended for by defendants leads to the con-
" clusion that the legislative intent was to discriminate in favor of
" real estate abutting on a street occupied in part by a railroad.

"They argue that such is the literal meaning of the concluding
" part of section 3, and that the court should not depart from the let-
" ter, under the pretence of pursuing its spirit."

*        *        *        *        *        *        *        *

"Act 10 of 1896 is a general paving statute, applicable to every
" street and alley in the city of Shreveport, and in all other cities of
" the same class.

"The act formulates the general rule that abutters shall pay two-
" thirds, and the corporation one-third of the entire cost of the im-
" provement.

"By a *proviso* in section 2, local assessment is, also, imposed on rail-
" roads, by the force of which they are subjected to the burden of
" paying a proportion of the cost of paving the entire street, includ-
" ing intersections.

"Section 3 provides for the assessment of both real estate as afore-
" said and for the entire street, including intersections.

"The legislative intent was, that railroads shall be so assessed in
" the proportion fixed in section two.

"Now, a literal interpretation of the concluding part of section 3
" provides only for the apportionment of two-thirds of the contract

" cost or price of the work between the blocks, leaving out the inter-
" sections; and charges the railroad not with its proportion of the
" whole cost as fixed by section 2, (a proportion of two-thirds of the
" whole cost).

        \*       \*       \*       \*       \*       \*       \*       \*

"The literal construction would destroy uniformity and create two
" classes of abutters, one class paying two-thirds, and the other class
" less than two-thirds of the cost, while enjoying equal benefits.

"Local assessments are a species of taxes on supposed benefits,
" measured in this instance by the frontage of real estate abutting on
" Texas street.

        \*       \*       \*       \*       \*       \*       \*       \*

"It is my opinion that the context of the act, its intent, and all the
" presumptions of law are against the construction that leads to the
" conclusion that an unreasonable discrimination has been embodied
" in the concluding part of section 3 in the Act of 1896.

"If the intent was to place all abutting real estate on the same
" footing, then, it is clear that the literal construction which contra·
" venes this intent should not be sustained.

"Section 3 should be construed so as to make the provisions of sec-
" tion 2 effective, and so as to place all owners of real estate abutting
" on the street, on the same plan of equality.

"Such a construction will harmonize all the provisions of the act,
" and carry into effect the legislative intent.

"The city is not a taxpayer. No local assessments are levied
" against her, and she is, primarily, bound for the whole contract
" price, under the charter of 1876 and 1898.

"The city is but the recipient of the proceeds of local assessments;
" it must make up the deficit out of her general revenues.

"The argument that the city does not pay one-third, and may, in
" certain contingencies, pay nothing, can not affect the questions of
" the liability of the taxpayer for his proportion as fixed by law, so
" long as the total taxation does not exceed the cost of the work."

As a summary of this entire argument, the judge makes this state-
ment:

"If it be the intent of the law, that the abutter shall pay two-thirds
" of the cost and the railroad another portion, then, it follows, that
" the city shall pay less than one-third; and this is the result of de-
" fendants' second position."

Recurring to the proposition set out in the beginning, we are to consider the simple question of the legality of the city ordinance, and not the constitutionality of the statute, which is not an issue in the case.

The entire discussion proceeds upon the theory, that the act of the legislature was a constitutional exercise of power—notwithstanding it makes no provision for the property owner to be consulted.

If we understand the theory of the district judge, it is that the contention of the city should be sustained, and the legality of the ordinance recognized, because in that way only, all abutters upon different streets, would be assessed in the same proportion.

In our view, the test of the ordinance is this:

The intention of the legislature in requiring of street railroads to pay a portion of the cost of street improvement. Hitherto, street railroad companies have not been required so to do.

The question arises whether the legislative intent was, by charging against the railroads a portion of the cost, to relieve the abutters of a portion of the expense, or the general taxpayer of the city, one or both?

If it was the intention to relieve the general taxpayers, it must necessarily follow, that the burden of abutting property owners is increased.

In this view, there is great force in the contention, that the portion of the cost which is charged to the railroad companies should be first deducted, and the residue apportioned between the abutters and the city, as provided in section 3.

The recitals of the ordinance are that "the abutting property hold-" ers throughout the whole length of the street and avenue paved, are " to pay two-thirds of the said area at the rate of $1.87 per square " yard, each one paying in proportion to frontage according to section " 3, Act 10 of 1896; and the Shreveport City Railroad and Shreveport " Belt Railroad companies are to pay in proportion to the space occu-" pied by their roadbeds compared to the entire width of the street, " and under its contract with the city of Shreveport, hereby fixed at " 12 feet from corner of Spring and Texas streets, throughout the " length of the aforementioned streets and avenues, etc. ✳ ✳ ✳

"The balance of the cost of paving shall be paid for by the city of " Shreveport," etc.

The sense of this ordinance is, that the abutting property holders

are required to pay two-thirds of the entire area, each one paying in proportion to frontage; the city railroad companies are required to pay in proportion to the space occupied by their roadbeds compared with the entire width of the streets occupied by them; and the city is to pay the balance of the cost.

Section three (3) of Act ten (10) of 1896 provides that the council shall "apportion two-thirds of the contract price on the basis of the " respective frontage of the real estate so abutting, and on the rail- " road track, in the proportion as set forth in section 2 hereof."

Referring to the provisions of section 2, we find the following, viz: "That the owners of real estate so abutting, shall pay (two-thirds) " 2-3 of the entire cost of such work, or improvement, and the cor- " poration shall pay one-third, out of its general resources, *provided,* " that where a railway bed or track occupies a portion of the street, it " shall pay in proportion to the space occupied by its roadbed, com- " pared to the entire width of the street," etc.

It is conspicuous (1) that no mention whatever is made of the city's portion of the cost of the street improvement in section three of the statute; (2) reference is made to the portions of the cost of the abut- ters *and* of the railroad companies, but the statement is qualified by a reference to the provisions of section two *supra.*

Hence, our conclusion is that the provisions of section three are not controlling and that resort must be had to the more general provisions of section two; inasmuch as they state specifically the rates or propor- tion of each one of the three parties—the abutters, the city, and the railroad companies.

On instituting a comparison between the provisions of the city or- dinance and the statute, it becomes apparent that the former has transposed the terms of the latter by stating (1) the share of the abutter to be two-thirds, (2) that of the railroad companies in pro- portion to the space occupied, and (3) that of the city as the remain- der of the cost; whereas, the statute states (1) the share of the abutter shall be two-thirds of the entire cost; (2) that of the city one-third; and (3) *provided* that if a street railway occupies a portion of the street, it shall pay in proportion to said space.

In our view, the effect of this transposition is to make a radical al- teration in the proportion of the cost of the street improvement.

According to the terms of the statute, the abutter is chargeable with two-thirds, and the city with one-third; and, in case there is a street

railroad operated in a given street, it is to be taxed for the space it occupies, and this amount is to be deducted from the whole cost.

By this process, the portion that is chargeable against the railroad companies, would proportionately diminish the shares of both the abutter and the city; but on the hypothesis of the ordinance, the abutter is held bound for two-thirds at all events, and the amount taxed against the railroad companies would only diminish the share of the city.

If this theory is maintained, the alteration of the law so as to compel street railroad corporations to pay a portion of the cost of street improvement, would benefit the general tax-payers of the city, to the detriment of abutting property holders, whose property is alone charged with a lien.

It can not be readily believed that such was the intention of the General Assembly in enacting the statute; on the contrary, we are of opinion that they expressed an opposite intention.

But, the argument of our learned brother of the District Court is, that such a construction as this, placed upon the statute, would render it obnoxious on the ground of inequality, in that abutting property-holders upon streets upon which street railroads are operated, would have to pay less, proportionately, than abutting property-holders upon streets upon which no street railroads are operated, would have to pay —suggesting the unconstitutionality of the law—and that, as the general rule of statutory construction which obtains is, that courts of justice should, rather, lean towards that interpretation which would relieve it of the objection of unconstitutionality than to one that would not, he has selected the latter.

Or, in other words, to save the law, his judgment sanctions an interpretation of the city ordinance which is contrary to its letter, and most injuriously affects the interests of the abutting property owners on streets upon which street railroads are operated.

But, is there such an inequality as the district judge suggests, on the theory presented?

Are there not two distinct and different classes of abutting property-holders—(1) those upon streets upon which street railroads are operated, and (2) those upon which no street railroads are operated?

Possessing dissimilar conditions, why should they not be dissimilarly treated?

And, if the street railroad corporations are required to pay a por-

tion of the cost of the pavement of the streets upon which they are operated, and that amount is *first* deducted from the total cost of the work, does not the amount they pay have the effect of diminishing the amount the city has to pay, and thus benefit all the taxpayers of the city, *all* abutting property owners included?

We think this is self evident.

We had, recently, occasion to examine and decide adversely a similar charge of unconstitutionality of a statute, in State of Louisiana vs. American Sugar Refining Company, 51 Ann., 562; 25 So. Rep., 447.

In Rosetta Gravel, Paving and Improvement Company vs. Jollisaint, No. 12,988, recently decided, we had under consideration a question of a special assessment for street paving in the city of New Orleans, and, in the course of our opinion held, that the city council could enforce collection from the front proprietors of lots abutting on the street, of a local assessment in proportion to the frontage,. and said:

"In quite a number of cases this court has held that local municipal assessments for local improvements are valid, although the organic law provides, that all *taxation* shall be equal and uniform; and the reason for that rule is, that such assessments are not taxation within the meaning of the constitution.

"Yeatman vs. Crandall, 11th Ann., 220;

"The New Orleans Drainage Co., Praying, etc., 11th Ann., 371;

"Wallace vs. Shelton, 14th Ann., 408;

"O'Leary vs. Sloo, 7th Ann., 25;

"Municipality vs. Guillotte, 14th Ann., 297;

"Dillon's Munic. Corp., Secs. 617, 619;

"Cooley on Taxation, p. 117; 416 *et seq.;*

"Charnock vs. Levee Board, 38th Ann., 328;

"Planting Company vs. Tax Collector, 39th Ann., 461.

"We think it unnecessary to analyze these decisions, inasmuch as the principles therein announced have been so generally accepted and acted upon by this court in many more recent decisions, that they may be accepted as in some respects axiomatic in its jurisprudence.

"The following cases may be appropriately cited in support of that proposition, viz:

"State *ex rel.* Hill vs. Judges, 46th Ann., 1298;

"Railroad Company vs. Sheriff, 47th Ann., 708;

"Fayssoux vs. Denis, 46th Ann., 650;

"State *ex rel.* Tax Collector vs. Court of Appeals, 49th Ann., 1221."

In the case of Missouri, Kansas & Texas Trust Company vs. Smart, 51st Ann., 416; 25th So. Rep., 449, this court said:

"The constitutional question sought to be raised by the police jury, " is without foundation in law or jurisprudence. Constitutional pro- " visions to the effect that all taxation shall be equal and uniform, " apply *only* to general taxation, and have no application to local as- " sessments. The provision of the constitution that 'taxation shall be " equal and uniform throughout the State,' does not apply to, or pre- " clude local assessments or special taxes levied in pursuance of spe- " cial provisions of law, in aid of public improvements.

"Municipality vs. Dunn, 10th Ann., 57;

"City of New Orleans vs. Elliot, 10th Ann., 59;

"Yeatman vs. Crandall, 11th Ann., 220;

"*In re* New Orleans Drainage Co., 10th Ann., 338;

"State vs. New Orleans, 15th Ann., 354."

The opinion makes the following quotation from a Massachusetts case:

"It is only when statutes impose taxes on false and unjust princi- " ples, or which operate to produce gross inequality, that courts can " declare them void.

"The words of the constitution, 'taxation shall be equal and uni- form,' refer to general taxes to defray the ordinary expenses of the " State and its subordinate local governments, and not to assessments " for local improvements.

"Local assessments are not taxation within the meaning of the con- " stitution, requiring uniformity of taxation."

The City of New Orleans, praying for opening of streets, 20th Ann. 497; The New Orleans Drainage Co., praying for confirmation of a tableau, 11th Ann., 370; Wallace vs. Levee Commissioners, 14th Ann., 498; Charnock vs. Levee District Company, 38th Ann., 323; Planting & Manufacturing Co. vs. Tax Collector, 39th Ann., 461; Paving Co. vs. Gogreve, 41st Ann., 251; Hill vs. Sheriff, 46th Ann., 1566; State *ex rel.* Hill vs. Judges, 46th Ann., 1302; Fayssoux vs. Denis, 48th Ann., 850; Cooley on Taxation, 116; Southern Reporter.

Similar opinions have found expression in the courts of other States, of which the following is an illustration, viz:

In Goshell vs. City of Louisville, 46 Southwestern Reporter, 722, the Kentucky court held, that "local assessment upon the property " benefited for the cost of a street improvement, is not a tax within " the meaning of the provisions of the constitution, limiting the tax " rate of cities, and requiring equality and uniformity of taxation."

Again:

"The distinction between a tax and a local assessment has been uni- " formly recognized by the courts of this State; and while the latter " is, in one sense, a tax, being the imposition of a burden upon the " citizens, and an involuntary charge upon his property, it is not a " tax in the sense contemplated by the framers of the constitution in " the section referred to."

In Express Co. vs. Seibert, 142 U. S., 339, the Supreme Court expressed the following view on a parallel subject, viz:

"They do not do business under the same conditions, or under sim- " ilar circumstances. In the nature of things, and irrespective of the " definitive legislation in question, they belong to different classes. " There can be no objection, therefore, to the discrimination made, as " between express companies defined by the act, and other companies " or persons incidentally doing a similar business by different means " and methods, in the manner in which they are taxed."

But the following argument of defendants' counsel has attracted our attention, to-wit:

"That the city's interpretation of the statute is erroneous, is dem- " onstrated by the condition on Common street.

"As shown heretofore, several hundred feet of this street is included " in the paving contract. Common street is a narrow street. The " two tracks of the street railway take up so much of the street, that " after the abutting property is made to pay (under the city's con- " tention) two-thirds (2-3) of the entire cost of paving, what the rail- " way will be called upon to pay in proportion to the space it occupies " compared to the width of the street, would more than pay the re- " mainder of the cost, and thus the city would be let out of paying " *anything at all* on the cost of the pavement, but might actually find " itself in the position of retaining *as revenue* a surplus. In other " words, paying nothing itself and actually collecting from the prop- " erty holders and the railway enough to leave it (the city) a balance " after settling with the contractor.' And yet, the law provides that a " third of the cost is to be borne by the city.' "

According to the foregoing hypothesis, a greater hardship would be placed upon the abutting property holders on these streets upon which street railroads *are* operated, than the judge *a quo* suggests with regard to abutting property holders on those streets where *no* railroads are operated, in that the city would be relieved altogether, and the general tax-payer as well, while the abutters on the streets first named would remain absolutely bound for two-thirds of the cost, at all events.

Consequently, the suggested unconstitutional effect of *a literal* interpretation of the act in question would not result, in our opinion.

With regard to the proper interpretation of that act we have collated the following authorities:

The general principle applicable to the exercise of municipal authority in levying a special street assessment is thus stated by an author of recognized authority, viz:

"It is a principle, universally declared and admitted, that muni-
" cipal corporations can levy no taxes, general or special, upon the
" inhabitants, or their property, unless the *power be plainly and un-*
*mistakably conferred.*

"The authority to municipalities to impose burdens of any char-
" acter upon persons or property, is solely statutory, and, as its exer-
" cise may result in a divestiture and transfer of property, it must be
" clearly given and strictly pursued."

Dillon on Municipal Corporations, Sections 605 and 610.

Upon the proposition that statutes which are in derogation of common right are to be construed strictly, the author of a recent treatise has this to say:

"It is a well settled rule that statutes which are in derogation of
" common right, and which confer special privileges, or impose special
" burdens or restrictions, upon individuals or upon one class of the
" community, not shared by others, should receive a strict construc-
" tion; and the courts will require that cases coming before them
" shall be brought clearly within the terms of such statutes before
" they will be held applicable thereto.

"But a statute can not be said to be in derogation of common right,
" unless it is confined in its operation to a particular individual or set
" of men, separate and apart from the rest of the community."

Black on Interpretation of Laws, page 200, No. 115.

Rothgerber vs. Dupuy, 64 Ill., 452.

Flint River Steamboat Co. vs. Foster, 5 Ga., 194.

The author makes the further statement, which particularly bears upon the instant case, to-wit:

"It is also said that an act authorizing an assessment for a street " improvement is in derogation of individual rights, and must be " strictly construed and rigorously observed.  If there is a failure to " comply with any material requirement of the statute, a sale of prop- " erty for non-payment of the assessment, or a lease based upon such " a sale, will be invalid to convey either the title or the right of pos- " session."

*Id.*, page 301, Sec. 115.

Citing Hopkins vs. Mason, 61 Barb., 469.

The same author further says:

"In this connection it may also be stated, that it is regarded as a " settled principle of law, that where there is a fair and reasonable " doubt as to the existence of a power in such corporation, the courts " will not uphold or enforce its execution.

"For example, statutes or charters delegating the power of taxation " to municipal corporations, will be strictly construed, and such dele- " gation should be made in clear and unambiguous terms, and the " grant will not be extended by implication or inference.  The reason " is that the power of taxation, being a sovereign power, can be exer- " cised by the legislature only *when* and *as* conferred by the constitu- " tion, and by municipal corporations only when unequivocally dele- " gated to them by the legislative body.  The charter of a municipal- " ity, in respect to the powers of taxation, which it grants, will not, " therefore, receive a liberal or expansive interpretation, and the " municipality will not have authority to lay any other taxes, or to " tax any other property, or to impose taxes for any other purpose, " than as its charter or the general laws of the State relating to muni- " cipal corporations, expressly, or by necessary implication, allow.

"The grant to a municipal corporation of the power to provide for " the levy and collection of special taxes for the improvement of " streets and alleys upon real estate adjacent to such improvements, " does not include the power to provide for the sale and conveyance of " such real estate in case of non-payment."

*Id.*, page 317, No. 119.

Citing Paine vs. Spratley, 5 Kans., 525.

Ottawa vs. Spratley, 108 U. S., 110.

Cooley, Const. Lim., 192 and 194.

Black's Const. Law, page 381.

The same author further says that, "where a strict construction is " appropriate, the courts standing upon the letter of the statute, will " accept it as they find it, and will not undertake to amend or reform " the language which the legislature has seen fit to employ.

"They will not put a forced or strained interpretation upon the " words of the law in order to avoid penal consequences, but neither " will they correct grammatical errors, wrest the words from their " usual signification in search of a supposed legislative intent, nor " supply apparent omissions or oversights."

*Id.*, page 262, section 118.

The same author further says:

"But in the construction, both of statutes and contracts, the intent " of the framers and parties is, to be sought, first of all, in the words " employed; and if the words are free from ambiguity and doubt, and " express plainly, clearly, and distinctly the sense of the framers of " the instrument, there is no occasion to resort to other means of in- " terpretation.

"It is not allowable to interpret what has no need of interpretation,. " and, when the words have a definite and precise meaning, to go else- " where in search of conjecture in order to restrict or extend the " meaning.

"Statutes and contracts should be read and understood according " to the natural and most obvious import of the language, without " referring to subtle and forced construction for the purpose of either " limiting or extending their operation."

*Id.*, page 37, No. 27.

In Storrie vs. Houston City Street Ry. Co., 46 Southwestern Reporter, 796, the Texas court had under consideration and interpreted a provision of a charter of the defendant which provided for the payment of the cost of a street improvement, by making a charge against abutting property owners and a street railway company—the latter being made liable for cost of paving between the rails, and for six inches on each side of the track; and the court, in the course of their opinion quoted the following provisions of the charter, to-wit:

"Such company is liable for paving to the extent stated, notwith- " standing a resolution of the city council providing that the cost of " the improvements shall be wholly defrayed by the abutters;" and, also, the following from the charter, to-wit:

"The portion of a street occupied by any railroad or street railway

" company, shall be deemed to mean, all that portion of the same be-
" tween the rails of all tracks laid and extending six inches beyond the
" outer edge of the rails of such road, and including the space between
" the double tracks and between the main track, side tracks or turn-
" outs," and then said:

"Construing the language of the resolution and that of section 23
" of the charter just quoted, together, it means that the street rail-
" way company should pay for all the pavement upon such streets ly-
" ing between the rails of its tracks and between its different tracks,
" side tracks, and turnouts, and that the remainder should be paid for
" by the owner of the property abutting upon the said streets on each
" side.

  *  *  *  *  *  *  *  *

"The city council had no authority to make a contract by which the
" abutting property owners would be charged with the costs of paving
" the entire surface of the street when it was occupied in part by a
" street railway; and it will be presumed that the language used was
" intended to bind the parties in accordance with the terms of the
" law."

In City of Philadelphia vs. Market Co., 29 Atlantic Rep., 286, it
was held, that when a statute makes a railroad company primarily lia-
ble for paving, repairing, or repaving a street on which its tracks are
laid, the abutting owners can not be called on till that liability is ex-
hausted.

In the case of State ex rel. Keith vs. Common Council, 37 North
Eastern Rep., 1041, the Indiana court, in construing a statute and
ordinance similar to the one under examination in the instant case,
made this statement, viz:

"The improvement in question could only be made on the order of
" the common council.  The assessment for its cost can be directed
" only against the specific property designated in the ordinance.

"This being so, the assessment for the cost between the rails of the
" street railway can not attach to the abutting property, when the or-
" dinance directs that it shall be levied against the property of the
" company, and the contractor is sent to it for his pay.

"We are of the opinion that the cost of the pavement between the
" rails should be borne by the company, and not by the abutting prop-
" erty."

In City of Chicago vs. Baer, 41st Ill., 306, a somewhat similar case is stated and the court announced this principle, to-wit:

"A street railway company occupying a portion of a street with "their track and in the use thereof, under a charter, and a contract "with the city authorities, have a franchise and right of occupancy "which is a property of a character to be substantially benefited by "the paving of such street; and in proportion as it is thus benefited, "it should contribute its share to the cost of the improvement, in "common with the other property of the street."

In Lightner vs. City of Peoria, 37 Northeastern Rep., 69, the Illinois court said: "That the right of way of the railways in the street pro- " posed to be improved is contiguous property, and falls within the "designation of property that may be specially taxed, was held in "Kuehner vs. City of Freeport, 143 Ill., 92. In this case it may fairly "be presumed that street railways were required to pave their right "of way. The exclusion of such rights of way from the pavement to "be paid for by the special taxation of contiguous lots, blocks and "tracts of land has been so frequently held not to invalidate the ordi- "nance, that it can, no longer, be considered an open question."

In City of Chicago vs. Cummings, 33 Northeastern Rep., p. 84, the Illinois court said:

"It thus appears that the railway company was relieved of paying "any portion of the cost of said improvement, and the whole thereof "assessed against adjacent property owners, or to the city, to be paid "from its general revenues. If the ordinance providing that the "railway company shall grade, pave, and keep in repair the portion "of the street occupied by it is valid, then only so much of the cost of "grading, curbing and paving of the street, outside of the 16 feet oc- "cupied by the railway should have been assessed against the property "benefited, or required to be paid by general taxation."

Again:

"As already seen, the ordinance requires paving of the street its en- "tire width, and the commissioners report that they have made an es- "timate of the cost of such improvement.

"It is manifest, therefore, that the cost of paving the entire 16 feet "of the street was wrongfully included in the estimate of the cost of "the improvement to be charged upon the property benefited; and the "court correctly ruled, in denying judgment of confirmation of the "assessment roll for that reason."

The opinion further states that the city ordinance properly required the improvement of the entire street.

"But, the city having required the railway company to fill, grade, " pave and keep in repair, during all the time　\*　\*　\*　the 16 feet " of space its double tracks occupied, and required the same to be done " by the railway company with like material, in like manner, and at " the time as is required in respect of the rest of the street, the cost " of paving so much of said street should have been excluded from the " estimate.

\*　　\*　　\*　　\*　　\*　　\*　,　\*　　\*

"There is no evidence tending to show that the expense of paving " the 16 feet would not be a fair and adequate apportionment of cost, " according to benefits accruing to the property of the railway in the " street by the improvement.

"Or, in other words, it does not appear that the benefits to the rail- " way property would exceed the cost of paving said 16 feet.

"If it would not, and the railway company was required to pave that " portion, it is clear that no additional burden would be cast upon the " property benefited, by requiring it to bear the cost, so far as bene- " fited, of the residue of the improvement."

In Washington and Georgetown Railroad Co. vs. District of Co- lumbia, 108 U. S., 522, the Supreme Court said:

"Nothing can be more just, than that the company should pay for " the work which its track alone makes necessary.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"The language of Congress on that subject, would seem to admit " of no other construction.　The third section (of the act) already " cited, says: 'The Washington and Georgetown Railroad Company " shall bear all the expense for that portion of the work lying between " the exterior rails of the tracks of the road, and for a distance of two " feet from and exterior to the track on each side thereof, and of keep- " ing the same in repair.'

"So far from relieving the company of the duty which it accepted " by its charter, the language reinforces that obligation, and makes " its application to the repavement clear.

"The statute goes on to prescribe what the United States shall pay, " and what the District of Columbia shall pay, and what individual A owners shall pay; and the proportion in which these parties are to " the cost of such special improvement, whether made or not, and it

" be charged, have no relation to the part to be paid by the railroad
" company, which is, in no case, a proportionate part of the street
" along which it runs, but *all* the expense of the work inside its rails,
" and for two feet exterior to this on each side."

In Gilmore vs. City of Utica, American Digest, 1890, p. 2706, Sec.
626, it having been stated that the charter of the city of Utica having
provided that the common council is authorized to require all railroad
companies operating street railroads in any of the streets of the city
to repave them between the tracks, and at least two feet in width on
each side thereof, whenever deemed necessary, the court said:

"Said provision is mandatory, and an assessment levied on abutting
" owners for the repavement of such portion, is illegal and void."

In Bacon vs. Mayor of Savannah, 32 Am. & Eng. Corporation
Cases, 243, the Georgia court said:

"The act certainly contemplates that street railroad companies, hav-
" ing tracks running through any street improved, should be required
" to macadamize or otherwise pave the railway track, and two feet on
" either side thereof, and at their own expense.

"But this, we apprehend, is chiefly to relieve the municipality and
" the abutting owners from defraying any portion of the cost incident
" to this part of street improvement.

   *       *       *       *       *       *       *       *

"By showing good cause an abutting owner may have the right to
" compel the city council, by mandamus, to execute the provisions of
" the act against street railroad companies.

   *       *       *       *       *       *       *       *

"Certainly the abutting owners can not be assessed for any part of
the cost of such improvement, whether made or not, and it
" would seem from the record that no part of such cost has in this in-
" stance been so assessed in arriving ultimately at an amount charge-
" able to abutting owners."

In Peake vs. New Orleans, 129 U. S., 342, it was held that when
" local improvement in a municipality is entered into, the contractor
" must look to the special assessments, and to them alone, for his com-
" pensation, and if they fail, without dereliction or wrong upon the
" part of the corporation, neither justice nor equity will tolerate that
" it be charged as debtor therefor."

Ernc vs. Parish of East Carroll, 45th Ann., 392, is to the same effect.

To the same effect is Gosnell vs. City of Louisville, 46 Southwestern Rep., page 722.

In City of Chicago vs. Baer, 41st Ill., 396, it was held that neither a city ordinance nor an act of the legislature can confer upon a city the power to make a valid contract with the owner of any interest in property, which should contribute toward the expense of such improvement, which shall have the effect to exempt him from his portion of the burden.

The foregoing consensus of judicial opinion affirms the principle that the right of occupancy of a portion of the streets of a municipality by a street railway corporation, is property which is benefited by a street improvement to the extent of the space occupied by its roadbed and tracks, which renders same liable for its proportionate share of its cost, just as the property of abutting property owners is liable.

That the railway company using the streets for the operation of its cars is in duty bound to pay for the work on the streets which its track alone makes necessary—that is to say, *all* expenses for that portion of the work lying between the exterior rails of the tracks of the road and for a distance of two feet from and exterior to the track on each side thereof.

That in no case can any portion of the cost of such improvement be attributed to, or assessed against the abutting property owners.

That when a statute or municipal ordinance makes provision for the assessment of a street railway corporation for the pavement of such space as its tracks and roadbed occupy, such provision is mandatory, and any portion thereof which is put upon abutting property owners is illegal and void.

That the very object and aim of such statutes is to relieve the municipality and abutting owners from defraying any portion of the cost incident to this part of street improvement.

The aforesaid adjudications reinforce and emphasize the quotations we have extracted from the treatises of text writers with regard to the propriety—aye! urgency if you will—for the strictest interpretation of such statutes; and, in our opinion, fully justify the construction we have given the provisions of section two (2) of Act 10 of 1896.

And this is particularly true of this statute, for the reason that it is the *fiat* of the General Assembly, which confers upon municipalities plenary power, upon their own motion, and without consulting the

wishes of abutting property owners, to contract for unlimited street improvement at their cost.

The remaining feature of the ordinance under consideration, which is to be considered, relates to the quantity of space that is occupied by the street railways that are enumerated therein.

We make the following extract from the defendant's answer, viz:

"The respondents further aver that the two tracks of the street railway companies on the streets named, occupy from fifteen and one-half (15 1-2) feet to twenty-two (22) feet, and that the company is chargeable in law for the cost of the paving and improvement, in proportion to the space the tracks occupy, to the width of the street; yet they show, that the city council of Shreveport by ordinance, has reduced, or attempted to reduce, the space for which the company must pay, to nine and one-quarter (9 1-4) feet."

They allege that this can not be done at the expense of abutting property holders of said streets.

The judgment was general with reference to all three defendants as abutting property holders, decreeing them to pay the amount of their respective assessments, and recognizing a privilege upon their respective properties as securing same.

And, by the rendition of that decree, the judge a quo sustained the city ordinance, both in respect to (1) the proportionate share of the whole cost of the street improvement which it puts upon them as abutting property holders; and (2) with regard to the amount of space which it declared the street railroad corporations actually occupy.

It appears to us quite obvious that the question as to the amount of space that is occupied by the street railway companies is not the proper subject of determination in a municipal ordinance to which the abutting property owners were not made parties, and over which they could not exercise control.

This determination was attempted in the instant case, and the exact quantity of space thus occupied was arbitrarily fixed in the ordinance; and, what is of greater importance to the abutting property holders, said space was calculated, without reference to any other than one single track, whereas it is the contention of the defendants that on some of the streets, there were double tracks which should have been considered in the calculation.

The tendency of the evidence is to support that proposition; and

we are of opinion that the provision of the ordinance which fixes the space thus occupied by the tracks of the street railways should be vacated, and the question left open for determination contradictorily, by and between the interested parties; that is to say, the abutting property holders, the street railway companies and the city—so that the due proportion of the assessment chargeable against each, may be legally ascertained according to law.

Entertaining these views, it is our judgment, that the provisions of said city ordinance in respect to the proportionate shares of the cost of the street improvement to be charged to said parties respectively, and, also, the space occupied by the railway companies, be decreed null and void, as not in conformity to the provisions of section two (2) of Act 10 of 1896; and that the decree appealed from be annulled and reversed, and one entered sustaining the demands of the defendants.

It is therefore ordered and decreed, that the city ordinance drawn in question, be annulled and avoided in the respects enumerated, and that the judgment appealed from be annulled and reversed; and, it is further ordered and decreed that the defendants' demands be sustained and enforced, at the cost of the plaintiff in both courts.

It is finally ordered and decreed, that the right of the city is reserved to readjust its ordinance in such manner as to conform to the law, and the views herein expressed.

Mr. JUSTICE BLANCHARD recuses himself on the ground of personal interest in the question at issue; and Mr. JUSTICE MONROE takes no part in this opinion on the ground that he was not a member of the court when the cause was submitted.

Mr. JUSTICE BREAUX concurs in the decree.