O’NIELL, J.
Having paved Parkerson avenue from Mill street to the north side of Court square, the plaintiff brought this suit to compel the parish to pay the proportion of the cost of the work assessed against Court square, which is surrounded by the paved avenue. The demand is for $7,857.51. The defendant’s only objection to paying it is that the assessment is out of proportion and not according to the front-foot rule provided in the statute authorizing the work to be done at the cost of the adjacent property owners. The plaintiff has appealed from a judgment of nonsuit.
[1,2] The ordinances providing for this street improvement were enacted in response to a petition signed by a majority of the taxpayers owning more than one-half in value of the property fronting on the improved portion of the avenue. The president of the police jury, authorized by a resolution of that body, signed the petition on behalf of the parish. The proceedings were conducted under authority of Act No. 131 of 1904, amending section 34 of Act No. 136 of 1898, authorizing municipalities to pave their streets and assess the cost to the owners of the abutting property, according to the front-foot rule of apportionment.
The defendant contends: (1) That the assessment is excessive and unfair to the property owners because the city has left unpaved spaces called neutral grounds in the center of the avenue, and that the city should therefore pay that proportion of the cost of the paving which the lineal measurement of both sides of these neutral spots bears to the lineal measurement of all property fronting or abutting the paved avenue; and (2) that in other respects, the system of assessment of this local tax, adopted by the municipality, is not one of equality and uniformity, and is not in accord with the statute authorizing it.
Parkerson avenue is the principal thoroughfare in the city of Crowley. It is 115 feet wide between property lines extending north from Mill street to and across the main line of railway of the Southern Pacific Company, thence continuing to and across Front, First, Second, Third, Fourth, and Fifth streets, to the center of the south boundary of Court square, where, with a width of 57% feet, it surrounds the square, and, resuming its original width of 115 feet at the center of the north boundary of the square, it continues on to' the northern limit of the city. *493 Most of the traffic from the surrounding country comes into the city through Parker-son avenue.
When the city was laid out in 1887, small trees were planted in the center of Parkerson avenue; but there is no record nor written evidence of a dedication of neutral ground within the avenue, nor does the official map or plat of the city show such dedication. About 20 years ago, the municipal authorities had the trees cut down, and, from that time until this paving was done, there was no evidence of neutral grounds in this broad avenue.
As a matter of economy to the property owners, and to beautify the avenue, the municipal authorities have laid off and sodded and left unpaved spaces 35 feet wide in the center of Parkerson avenue, between the intersection of Front street and First Street, and of First and Second streets, and so on as far as the paved avenue retains its width of 115 feet. The sidewalks are 14 feet in width from the property line along the avenue, and the new pavement of the thoroughfare is 26 feet in width on each side of the grass plots between the intersecting streets from Front street to the point where the avenue branches off east and west and passes around Court square.
On account of the congestion of traffic around the Southern Pacific depot, the pavement from Front street to the south boundary of the railroad right of way extends the entire width of 87 feet between the sidewalks. And, on account of the manufacturing establishments on the avenue from the south boundary of the Southern Pacific right of way to Mill street, the sidewalk on the east side of the avenue is only 9 feet wide, the new pavement on that side is 34 feet wide, the grassgrown space is 29 feet wide, the new pavement on the west is 29 feet wide, and the sidewalk on that side is 14 feet wide. Thus this central avenue of the city has a uniform width of 115 feet between property lines, extending north and south from the' center of Court square. The pavement on the four sides of Court square is 26 feet in width. The sidewalks adjoining the square are 21% feet wide, and .those along the private property lines, opposite Court square, are 10 feet wide.
The petition signed by the property owners and by the president of the police jury, requesting the municipal authorities to pave Parkerson avenue, contained no restriction regarding the width of the space to be paved. The proposition was that, if the city would pave the avenue- from Mill street to the north side of Court square and pay that proportion of the cost which the area of the intersections of the streets crossing the avenue bear to the total area paved, the property owners would pay the balance of the cost in proportion of the front measurement of their properties abutting the paved portion of the avenue, according to the provisions of Act No. 131 of 1904. It was not contemplated that the city should pay more of the cost than the proportion which the area of the intersections of the streets crossing the avenue would bear to the total area paved. Nor was there any protest against sodding and leaving unpaved these beauty spots in the center of the avenue. If the defendant’s contention is correct, that these sodded spaces are to bear the same proportion of the tax that is borne by the private property abutting the paved avenue, the city will be compelled to pay, not only for the area of the intersections of the cross streets, but also one-half of the cost of paving the remaining area between these intersections.
In support of this contention, the defendant’s counsel cite the decision of this court in the case of City of Shreveport v. Weiner, 134 La. 800, 64 South. 718. In that case, however, it was observed that the grass plots left unpaved in the center of the street did *495 not form a part of the street; that they had been dedicated as neutral grounds, marked “Esplanade” on the original plat of that subdivision of the city; and that, when one of the property owners requested that these neutral grounds be included in the street and paved, the street commissioner refused the request because he was of the opinion that it would be a diversion from the use for which these open spaces were dedicated to the public and would cause the title to revert to the former owner.
In that case, the court referred to the decisions in Marquez v. City of New Orleans, 13 La. Ann. 319, Correjolles v. Succession of Foucher, 26 La. Ann. 363, Fayssoux v. De Chaurand, 36 La. Ann. 547, Barber Asphalt Co. v. Gogreve, 41 La. Ann. 259, 5 South. 848, and State ex rel. City of New Orleans v. N. O., C. & Lake R. R. Co., 42 La. Ann. 555, 7 South. 606, which, in our opinion, do not support the defendant’s contention in this case.
In the case of Marquez v. New Orleans, without any petition or request from the property owners, the city graded and shelled only that side of Claiborne street north of the wide neutral ground, and it was decided that the owners of the property fronting on the unimproved street on the south side of the neutral ground were not obliged to pay for improving the street on the opposite side of the neutral ground. To the same effect is the decision in Correjolles v. Succession of Foucher, where the police jury of Jefferson parish constructed a shell road along the north side of the land occupied by the New Orleans & Carrollton Railroad, and it was decided that the property fronting on the unimproved road on the south side of the property occupied by the railroad could not he taxed for the construction of the road on the opposite side.
The decision in Fayssoux v. Succession of De Chaurand has no application whatever to the present case. It was decided there that the tax which the city attempted to impose upon the property fronting on Bienville street to pay the cost of paving it was invalid because there was no petition on the part of the property owners nor publication of the intention of the municipal authorities to pave the street. The city pretended to proceed under authority of Act No. 73 of 1876, the first section of which, referring only to streets having no neutral ground, provided that the municipal authorities might pave such streets and assess all of the cost to the abutting property, after publication of a petition from a majority of the property owners. The second section of the statute, referring only to streets having a strip of neutral ground in their center, authorized the governing authorities to proceed on their own motion to pave such streets provided the city should pay one-third of the cost. Although there was no neutral ground on Bienville street, the city proceeded without the petition or request from the property owners, paved the whole street, and sought to compel them to pay the entire cost.
The cases cited above were referred to approvingly in Barber Asphalt Paving Co. v. Gogreve, but the latter decision itself has no application here.
All that was decided in State ex rel. City of New Orleans v. N. O., C. & L. R. R. Co. was that the condition in the grant of the franchise, that the street railway company should keep in good condition the streets through which its tracks passed, did not apxfiy to the neutral grounds on Canal, Rampart, and Esplanade streets.
The entire space between the property lines on Parkerson avenue was dedicated for a street. The spaces in the center, which have been sodded and left unpaved, form yet a part of the street. They are only ornamental, it is true, as would be a space occupied by a monument, a statue, or a fountain; but *497 they nevertheless form a part of the street. And it is anomalous to say that a portion of a street fronts upon the street. Besides, the city cannot levy an assessment upon its own property. The statute of 1904 provides that the city shall pay only that proportion of the cost of the pavement which the area of the intersections of the cross streets bears to the total area paved. The Legislature has not declared in the statute of 1904, as it did in Act No. 73 of 1876, that the city shall bear a greater portion of the cost of paving streets having neutral grounds in the center of them than of the cost of paving streets having no such ornamental spaces. And we have no authority in law or equity for shifting any of the burden of this tax from the owners of the property fronting on the paved avenue to the other taxpayers of the city generally.
Considering that Parkerson avenue has more width than is necessary for its traffic, and that the setting apart of the ornamental spaces in its center will not interfere with, but will perhaps facilitate, the observance of the rule of the road, the mayor and aider-men had ample authority to adopt that plan of improvement, under their general control and supervision over the streets of the city.
Our conclusion is that the city of Crowley is not, as the owner of property on Parkerson avenue, required to bear half of the cost of the pavement adjoining the neutral ground or ornamental spaces in that street.
Taking up the defendant’s second objection, however, we find that the assessment of the cost of this street improvement was not made in conformity with the statute, and that it does not distribute the burden of the tax with equality or uniformity.
Section 5 of Act No. 131 of 1904, under authority of which these proceedings were had, provides that the entire costs, including costs of culverts, headers, filling, engineering, labor, material, etc., of the paving shall be apportioned as follows: The city shall pay that proportion' of the total'cost which the area of the intersections of the streets crossing the street that is to be paved bears to the total area to be paved. If a railway occupies any portion of the street to be paved, the railway company shall pay that proportion of the total cost which the area of the space occupied by its roadbed bears to the total area to be paved. The remainder of the cost of the entire work is to be borne by the owners of the property abutting the street to be paved “according to the front-foot rule provided for in section 5” of the act. This reference to section 5 of the act is an error, because that is the number of the section containing the expression, and it does not contain an explanation of the front-foot rule. We assume that the Legislature intended to refer to the front-foot rule provided in section 4 for apportioning the cost of paving sidewalks. That rule is described and applied “by ascertaining the entire expense of the improvement and charging it upon each lot or parcel of real estate in the proportion that its frontage or abutment bears to that of all the abutting lots or parcels of real estate to be improved.”
Although we have no authority to make a rule of equality and uniformity for the assessment of a tax, it is necessary that we put an interpretation upon the front-foot rule referred to in section 5 of this statute. And we must do this assuming that the Legislature intended to say section 4 when they said section 5.
Our interpretation of the rule of apportionment is this: Every item of expense, including the cost of culverts, headers, curbing, gutters, filling, engineering, labor, material, etc., is to be added together and the sum divided by the total number of square yards or square feet of pavement to ascertain the cost of the improvement per square yard or per square foot. The cost per square yard or *499 per square foot, multiplied by tbe number of square yards or square feet in the area of pavement embraced within tbe intersections of tbe streets crossing tbe paved street, will show tbe amount wbicb tbe city shall pay. In tbe same manner, tbe number of square yards or square feet of pavement in the space occupied by tbe roadbed of any railway, multiplied by the cost per. square yard or per square foot, will determine tbe amount to be paid by tbe railway company. And, in tbe same manner, the cost of a linear foot or running foot of pavement is determined by multiplying tbe number of feet in tbe width of tbe pavement by tbe cost of one square foot. After subtracting from tbe total cost of the improvement tbe amount ascertained to be due by tbe city and by any railway company or companies, tbe remainder of tbe cost is to be assessed equally to tbe property on each side of tbe paved street, according to the front-foot rule. One-half of tbe cost per linear foot of pavement, multiplied by tbe number of feet between tbe lines of any property opposite to and adjoining tbe paved street, will determine the amount for wbicb that property is to be assessed. • This, in our opinion, is tbe only equitable front-foot rule. It requires each property owner to pay for tbe improvement in proportion to tbe area of pavement in front of or opposite bis property, just as it requires the city to pay in proportion to tbe area of pavement in tbe intersections of the cross streets, and tbe railway company to pay in proportion to tbe area occupied by its roadbed. This interpretation of the law is in harmony with that put upon a similar statute, Act No. 147 of 1902, in tbe case of Town of Minden v. Glass, 132 La. 927, 61 South. 874; and it does not conflict with tbe doctrine of City of Shreveport v. Prescott et al., 51 La. Ann. 1895, 26 South. 664, 46 L. R. A. 193, nor with any other decision of this court to wbicb we have been referred.
There is error to tbe defendant’s prejudice in tbe assessment according to tbe measurement of tbe abutting property lines, without regard to the width of tbe pavement in front of or opposite each lot of ground. It is also an error to tax each lot for tbe cost of tbe curbing and gutters in front of it. Tbe cost of curbing and gutters should be included with all other costs of tbe improvement, and tbe total sum distributed as directed by tbe statute. For example, assuming that tbe engineer's figures are correct, tbe cost of tbe headers, curbing, and gutters, and of tbe engineering and extra work, amounting in all to $5,859.48, should have been added to tbe cost of tbe 19,662.59 square yards of paving at $2.58 per square yard, $50,729.48, and tbe total cost, $56,588.71, divided by tbe number of square yards gives tbe basis of every assessment; i. e. $2.8779+ per square yard, or $.3197+ per square foot. So that tbe defendant and other owners of property abutting tbe avenue at Court square, where tbe pavement is 26 feet wide, should be assessed at tbe rate of $4.1565 per front foot. Tbe difficulty suggested with regard to tbe lots in what are called tbe inverted corners, diagonally opposite tbe corners of Court square, such as lot No. 8 and lot No. 21,’ each having a front of 17% feet on tbe paved street, is only imaginary. Each of these lots should be assessed for 17% feet front at say $4.-1565, tbe same as if they were on opposite sides of tbe same street. And, on this basis, tbe property fronting on Parkerson avenue, from Court square to Front street, should be assessed at $8,313 per front foot, from Front street to tbe south line of tbe Southern Pacific right of way, at $13,909, and thence to Mill street, at $10.0715 per front foot. These rates, although carefully calculated and perhaps correct, are subject to any errors that may be found in tbe calculations or in tbe figures of tbe engineer. They will serve to illustrate our interpretation of the front-foot *501 rule of apportionment. Having found that the assessment complained of is wrong and invalid, we have no authority to make an assessment for the city. We must affirm the judgment of nonsuit, -reserving the plaintiff’s right to recover on a valid assessment to be made according to the views expressed in this opinion.
The judgment is affirmed.