(113 So. 573)

No. 28426.

TAYLOR et al. v. CITY OF HAMMOND et al.
(CATE ESTATE et al., Interveners).

May 23, 1927.

*(Syllabus by Editorial Staff.)*

1. **Municipal corporations** &=469(1)—**Improvement, petitioned for and completed as single improvement, by which street was paved at different widths, was unit of improvement for assessment (Act No. 187 of 1920, as amended and re-enacted in part by Act No. 115 of 1922).**

   Street improvement, by which different widths of pavement were laid along sections of street, constituted single improvement for assessment purposes, under Act No. 187 of 1920, as amended and re-enacted in part by Act No. 115 of 1922, where work was done under single petition and was treated as single improvement.

2. **Municipal corporations** &=469(1)—**Abutting property in each section of street paved at different widths assessable with share of entire cost in proportion to pavement's width (Act No. 187 of 1920, § 2, as amended and re-enacted by Act No. 115 of 1922, § 3).**

   Where, in single street improvement project, street was paved at different widths in two sections, abutting property in each section should, under Act No. 187 of 1920, § 2, as amended and re-enacted by Act No. 115 of 1922, § 3, be charged with its share of entire cost in accordance with proportionate width of pavement of particular section assessed as compared with width in other section.

3. **Municipal corporations** &=488, 489(1)—**Property owners may presume apportionment of assessments for improvements will be legally made.**

   Property owners are not bound to anticipate that council will misinterpret statute in making apportionment of assessment for improvements, but may presume that apportionment will be in accordance with law.

4. **Municipal corporations** &=488, 489(5)—**Property owners held not estopped to claim assessment was improperly apportioned, by failure to protest, until after levy and recording of assessment.**

   Property owners *held* not estopped to contest validity of apportionment of assessments by fact that they made no protest against

plan for improvement or manner of execution, or assessment itself, until after levy and recording of assessment.

5. **Municipal corporations** &=513(1)—**Injunction to restrain enforcement of illegal assessment does not violate Constitution (Const. 1921, art. 10, § 18).**

   Enforcement of illegal assessments for improvements may be prevented by injunction, notwithstanding Const. 1921, art. 10, § 18, which merely permits Legislature to provide against process to restrain collection of taxes.

6. **Constitutional law** &=30—**Constitutional provision requiring Legislature to prohibit process restraining collection of taxes is not self-operative (Const. 1921, art. 10, § 18).**

   Const. 1921, art. 10, § 18, providing that Legislature shall prohibit issuance of process to restrain collection of taxes, *held* not self-operative.

Appeal from Twenty-First Judicial District Court, Parish of Tangipahoa; Charles Kilbourne, Judge.

Action by Lewis Nauman Taylor and others against the City of Hammond and others for an injunction, in which the Cate Estate and others intervened. Judgment for plaintiffs, enjoining the collection of an assessment, and defendants and interveners appeal. Affirmed.

A. W. Spiller, of Hammond, for defendant appellants.

John J. Jackson, of Hammond, for intervening appellants.

Taylor, Porter, Loret & Brooks, of Baton Rouge, for appellees.

OVERTON, J. The owners of more than 60 per cent. of the lineal frontage of the real estate abutting Magnolia street from West Thomas street to Church street in the city of Hammond petitioned the commission council of that city to pave the foregoing section of Magnolia street with some type of natural rock asphalt, to be laid cold on a gravel base, using the gravel then on the street to construct the base. On the day·

that this petition was presented to the council, which was April 23, 1926, that body ordered the city attorney to publish notice of the petition for the time and in the manner prescribed by law. The city engineer filed the plans, specifications, and estimated cost of the improvement, and the city attorney, who seems to have been also secretary of the council, published for the time prescribed by law, in the official journal of the city, notice of the filing of the petition, notice that the petition, the plans and specifications, and estimated cost of the improvement were on file at the mayor's office, subject to public inspection, and that, unless opposition were made during the 30 days' publication, the improvement would be ordered, and the cost thereof taxed against the owners of the abutting property.

That part of Magnolia street upon which pavement was petitioned for consisted of three blocks. The plans and specifications, filed by the engineer, called for the paving of Magnolia street on the block nearest West Thomas street from curb to curb, which called for a paving in said block 32 feet wide, and for the laying of storm sewers and the construction of catch-basins therein, but in the remaining two blocks the plans and specifications did not call for paving the street to its full width, but only to a width of 18 feet through the center of the street, and called for no storm sewers in those blocks. The reason for these differences in the paving was because the block nearest West Thomas street is devoted entirely, or almost so, to business purposes, whereas the remaining blocks are devoted almost entirely to residential purposes, and 'it was thought that a wider pavement with storm sewers was necessary there, but not necessary in the other blocks. The estimated cost of the improvement, filed by the engineer, showed that the cost for the block nearest West Thomas street would be $8.46 a front foot, and that the cost on the remaining blocks would be $2.14 a front foot.

No opposition was filed against the making of the improvement. The council accepted the plans and specifications, advertised for bids in accordance therewith, and let the contract. The work was done, and the council passed an ordinance accepting it and levying the assessments. In levying the assessments, it apportioned the cost of the improvement in the block nearest West Thomas street where the pavement was 32 feet wide, among the owners of the property thereon in accordance with the frontage of their property, and in the two blocks remaining, where the pavement is 18 feet wide, it apportioned the cost of the improvement among the owners of the property abutting thereon in accordance with the frontage of their property, thus treating the improvement, for purposes of assessment, as two distinct pieces of work.

Lewis N. Taylor, one of the plaintiffs herein, is the owner of real property abutting the improvement in the block nearest West Thomas street, subject to the right of use and habitation in another of the plaintiffs. The assessment against the property owned by Taylor is $516.36, whereas against property of the same frontage in the remaining blocks the assessment is only $165.38.

These plaintiffs complain of the assessment made against the property owned by one of them and in which the other claims an interest. Their contention is that the assessment is arbitrary and illegal, and should have been arrived at and made by apportioning the cost of the entire work, throughout its length, among the owners of the property abutting thereon, in accordance with the frontage of their property, and they pray for a writ of injunction, restraining the city from selling their property to satisfy the assessment. The defense is that the council had a right, under the circum-

stances, to create, as it were, two taxing districts, and to apportion the cost in each, and levy the assessments as it did. The plea is also made that plaintiffs are estopped to contest the assessment against their property. An exception of no cause of action was also filed. Some of the property owners, owning property abutting the improvement in the two blocks where the 18-foot pavement was laid, intervened in the suit, joining the city therein.

[1, 2] The work was done under Act No. 187 of 1920, as amended and re-enacted, in part, by Act No. 115 of 1922. Section 3 of the amendatory act, which amends and re-enacts section 2 of the original act, provides for the apportionment and assessment, and reads, so far as pertinent here, as follows:

"The entire cost, including cost of culverts, headers, filling, engineering, labor, material, etc., of such improvement, shall be paid by the owners of real estate abutting thereon, according to the frontage of the property owned by them; provided, if there be parts of streets or alleys included * * * of greater or less width than other parts thereof, the amount to be paid by abutting property owners shall be proportioned to such varying width. * * *"

The work done, in our view, constituted a single improvement. There was but one petition for the paving of the three blocks; that petition expressly referred to the three blocks as constituting a single unit for improvement, and while plans calling for pavement of different widths, with storm sewers in the wider section, were finally adopted, yet the work was ordered done and was let, as if it were a single improvement. In these circumstances, we feel that it should be considered a single improvement. The council, therefore, should not have treated the improvement, in apportioning the cost, as if it were two distinct improvements, separately petitioned for, but should have treated the improvement as a single improvement, and apportioned the cost thereof so that the abutting property in each section would be charg-

ed with its proportion of the entire cost, in accordance with the width of the pavement in each—that is, in the proportion of 32 to 18 —and, after ascertaining the cost due by the abutting property in each section, the cost due by the property, say, in the wider section, should be apportioned among the owners of the abutting property therein, in the proportion that the frontage of their property, so abutting, bears to that of all the abutting property in that section, and the cost found due in the remaining section should be apportioned in the same manner among the abutting property owners therein. This we conceive to be the rule, in such a case as this, established by that part of section 3 of the statute quoted supra. It is true that the statute, in modifying the front-foot rule, mentions only the varying width of a street or alley included in a single improvement, and that the street, in this instance, is of uniform width, but the situation presented is substantially the same as if the street were of different widths.

The case of City of Crowley v. Police Jury of Acadia Parish, 138 La. 488, 501, 70 So. 487, cited by plaintiffs to show that the assessment made is illegal, and that the varying width of the pavement should not be taken into account in making the apportionment, is not pertinent here. That case arose under a different statute, which contained no such modification of the front-foot rule as the modification here presented. It is evident that the very reason for enacting the present statute was to alter the rule announced in that case, so as to provide for taking into account the varying width of the pavement in making the apportionment. While, therefore, we are not wholly in accord with plaintiffs' view as to how the apportionment should have been made, still we are of the opinion that it was illegally made.

[3, 4] The plea of estoppel filed by defendants, and adopted by interveners, who urge

it in a separate brief, is not well founded. This plea is based on the theory that plaintiffs are estopped to contest the validity of the proceeding, because they stood idly by and made no protest against the plans for making the improvement, or the manner in which the plans were being executed, or against any step taken in the matter, until after the assessment had been levied and recorded in the mortgage records. Plaintiffs are not protesting against the plan adopted for the making of the improvement, or the manner in which they were executed. All that they are complaining of is the legality of the assessment by reason of the manner in which the apportionment was made. Plaintiffs were not bound to anticipate that the council would misinterpret or depart from the statute in making the apportionment, but had, notwithstanding the foregoing, the right to presume that the council would make the apportionment in the manner prescribed by the statute. From no standpoint are plaintiffs estopped from contesting the assessment. Nor are they estopped because the city recorded the assessment before plaintiffs made complaint.

[5, 6] The exception of no cause of action filed by defendants is directed against the issuance of the injunction prayed for, and is based on section 18 of article 10 of the Constitution of 1921. That section reads as follows:

"The Legislature shall provide against the issuance of process to restrain the collection of any tax and for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him."

As observed by the learned trial judge, this section is not self-operative, and the Legislature has not passed the requisite legislation to make it effective. In the absence of an adequate remedy provided by law, plaintiffs are entitled to an injunction restraining the enforcement of the illegal assessment.

In a carefully written opinion, the trial court found that the assessment was illegal, and ordered the injunction to issue and perpetuated it. This decree, of course, does not preclude the city from levying a proper assessment.

The judgment appealed from is affirmed.

O'NIELL, C. J. (concurring). My understanding of section 3 of Act No. 115 of 1922 is that the total cost of paving the three blocks, including the storm sewers and catchbasins which were placed along the 32-foot width, should be divided by the total number of *square* feet of pavement in the three blocks, and the result being the cost of the work per square foot of pavement, should be multiplied by the number of square feet of pavement in front of each property owner's front line and extending to the center line of the pavement. That is the only way to make the amount to be paid by each property owner proportioned to the varying width of the pavement, as the statute provides. That being my interpretation of the opinion and decree rendered in this case, I concur in it.