Dear Mr. Solco and Mr. Lupo:
This opinion is in response to both of your independent opinion requests, each of which address the same issues. The Federal Aviation Administration ("FAA") initially requested an opinion from this office regarding the ownership of and management authority over the Lakefront Airport, located in New Orleans. Subsequent to that request, the Chairman of the Non-Flood Protection Asset Management Authority also submitted an opinion request for the same questions asked by the FAA. The FAA has suspended Airport Improvement Program Grant Funding until this Office provides clarification on the ownership of the Lakefront Airport and the Non-Flood Protection Asset Management Authority made this request in response to that suspension of funds.
Generally, both of your requests seek clarification regarding which State or local agency has the authority to own, manage, and contract on behalf of the Lakefront Airport. You have both also posed three more specific questions, to wit:
 1. Who is the current fee owner and operator of the Lakefront Airport and what is the legal basis for that opinion?
 2. Who will be the fee owner and operator of the Lakefront Airport after January 2, 2012, based on Section 6, Act 1014 of the Louisiana 2010 Regular Legislative Session ("Act 1014") and Act 363 of the Louisiana 2011 Regular Legislative Session ("Act 363")?
 3. Did the State of Louisiana intend to relinquish its authority, rights, and powers to carry out its obligations to the United States under grant *Page 2 
assurances given in return for federally funded improvements at Lakefront Airport?
The answer to the more general question of who has the authority to own, manage, and contract on behalf of the Lakefront Airport is addressed within the answers to the more specific questions presented below.
Who is the current fee owner and operator of the LakefrontAirport and what is the legal basis for that opinion?
La.R.S. 38:336, La.R.S. 38:330.12, and Louisiana jurisprudence make it clear that the Orleans Levee District ("OLD") is the fee owner of the Lakefront Airport.
In 1930, the State of Louisiana amended its Constitution to allow the OLD to construct an aviation field on the banks of Lake Pontchartrain.[1] That constitutional provision has now been subsumed in La.R.S. 38:300, et seq. with respect to the ownership of the Airport and other properties, La.R.S. 38:336 currently and specifically provides, in pertinent part:
 To enable the board of commissioners of the Orleans Levee District to perform the work herein provided for . . . the state of Louisiana hereby grants and releases to the district the title of the state in and to all public property necessary for the purposes hereof and all lands reclaimed or filled in within any levee embankments . . . the board shall have the jurisdiction, power, and authority to sell, lease, or otherwise dispose of such portion of the lands reclaimed and other property acquired for the purpose of the improvement . . .
Furthermore, you note in your opinion request that the OLD has previously exercised its authority over the Lakefront Airport by entering into contractual relationships with the FAA to receive Airport Improvement Program ("AIP") funding. There is no provision in the current law that calls into question the OLD's ownership of the Lakefront Airport as established by the aforementioned statute and as exhibited by the previous relationship between the OLD and the FAA.
The more recently enacted La.R.S. 38:330.12 separates the ownership and the management of the various assets (flood and non-flood) owned by the OLD, but it nevertheless confirms that the OLD is the owner of all such assets.[2] Consistent with these changes, the recently-created Non-Flood Protection Asset Management Authority ("Non-Flood Authority"), has the power "to manage, *Page 3 
control, regulate, operate, and maintain" non-flood assets of the OLD such as the Lakefront Airport.[3]
 Who will be the fee owner and operator of Lakefront Airportafter January 2, 2012 based on Section 6, Act 1014 of the Louisiana2010 Regular Legislative Session and Act 363 of the Louisiana2011 Regular Legislative Session?
The owner of Lakefront Airport will not change in 2012 by virtue of Section 6, Act 1014 of the Louisiana 2010 Regular Legislative Session. As established by La.R.S. 38:336, the OLD is the owner of the Lakefront Airport. There is no language in the newly enacted La.R.S. 38:330.12.1 or in the amended and reenacted La.R.S. 38:330.12[4] to supplant the grant of ownership found in La.R.S. 38:336.
As discussed below, the language contained in Section 6 of Act 1014[5] has generated some questions as to which version of La.R.S. 330.12 will exist after January 1, 2012. However, the provision does not call into question the ownership of the Lakefront Airport. As previously stated, La.R.S. 38:330.12(A) before and after the passage of Act 1014 confirms the ownership of assets such as the Lakefront Airport which was established in La.R.S. 38:336. Nothing in Acts 1014 or 363 operates to modify these ownership provisions.
The reason that Act 1014 gives rise to questions about the state of the law after January 1, 2012, is because Section 2 of the act "amends and reenacts" La.R.S. 38:330.12 to transfer control of non-flood assets from the Division of Administration to the Non-Flood Authority.[6] However, Section 6 of the same Act states that "the provisions of law contained in Sections 1 and 2 of this Act shall . . . cease to be effective on January 1, 2012." As your opinion request illustrates, one potential interpretation of this language is that La.R.S. 38:330.12, in its entirety, will cease to be effective after January 1, 2012. However, it is the *Page 4 
opinion of this office that such an interpretation would lead to absurd results, which were not intended by the Legislature.
Section 2 of Act 1014 slightly amended the language of La.R.S. 38:330.12 to reflect the change in control over the non-flood assets from the Division of Administration to the Non-Flood Authority. However the more significant change in Section 2 was the enactment of La.R.S. 38:330.12.1, which created the NonFlood Authority. The Non-Flood Authority, as in Section 2 of Act 1014, originally was a state agency placed within the Department of Transportation and Development ("DOTD"), but with the enactment of Section 4, the Non-Flood Authority was to become a freestanding political subdivision and exist exclusive of DOTD on January 1, 2012. Although the time periods in Section 6 seem to apply to the entirety of Section 2, it is the opinion of this office that the provisions were meant for the purpose of having the Non-Flood Authority under the DOTD's control only for a limited amount of time and not to repeal the original or reenacted La.R.S. 38:330.12.
Answering the question posed by your opinion request involves statutory interpretation. Any such interpretation is subject to the following general rules of statutory construction as summarized by the Louisiana Supreme Court in Pumphrey v. City of NewOrleans, 05-979, p. 10-12 (La.4/4/06),925 So.2d 1202, 1209-10 (internal citations omitted):
 The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will, and therefore, interpretation of a law involves primarily a search for the Legislature's intent.
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the Legislature. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the words of law must be given their generally prevailing meaning. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole, and laws on the same subject matter must be interpreted in reference to each other.
 The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent *Page 5 
with the express terms of the law and with the obvious intent of the Legislature in enacting it. The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it. This is because the rules of statutory construction require that the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law.
The Louisiana Supreme Court has also made clear that the repeal of a statute by implication is not favored if there is any other reasonable interpretation.[7] There are reasonable interpretations of Act 1014 other than a wholesale repeal of La.R.S. 38:330.12, and it is the opinion of this office that the Legislature clearly did not intend such a result.
Sections 1 and 2 of Act 1014 contemplate the creation of the Non-Flood Authority as a state agency within the DOTD and the transfer to the state's control of non-flood protection assets of levee districts, effective August 15, 2010. Sections 3, 4 and 5, contemplate the creation, or more accurately the constitution, of the Non-Flood Authority as a political subdivision independent of DOTD and the transfer of control over non-flood protection assets to the newly-reconstituted political subdivision, effective January 1, 2012. Obviously, the two allocations of control (not ownership) of the same assets to two distinct political entities are mutually exclusive. We believe that the Legislature in Section 6 (A) and (B) specified that the effects of the allocation to the state of control over these assets found in Sections 1 and 2 would be effective from August 15, 2010 until January 1, 2012 and the allocation of that control to an independent Non-Flood Authority found in Sections 3, 4 and 5 would not be effective until January 1, 2012. It is a reasonable interpretation to conclude that Section 6 was intended to resolve the conflicts between the mutually exclusive legislative actions that would otherwise simultaneously amend and repeal the same statutory provisions.[8] On the other *Page 6 
hand, the parts of Section 2 revising R.S. 38:330.12 have no countervailing or contradictory counterparts in the provisions that follow. Unlike the other laws and amendments created by Sections 3, 4, or 5 of the Act. We are therefore of the opinion that the somewhat ambiguous provisions of Section 6 of Act 1014 cannot be read as repealing the amendment R.S. 38:330.12.
There are two key elements of the Legislature's actions that support the conclusion that there was no intent to repeal La.R.S. 38:330.12. The first element is that, had the Legislature intended to repeal the law, it would have clearly stated such in the heading to Act 1014, as was done with La.R.S. 36:509(P) in Section 5 of the Act. Furthermore, in the sections to become effective in 2012 (Sections 3 and 4) the Legislature made amendments only to those provisions that governed changing the Non-Flood Authority from an entity under DOTD to an independent entity and those describing the composition of the board. No further reference to Section 3 and 4 make the amendment to La. R.S:38:330.12 that officially transferred authority over the non-flood assets to the newly-created Non-Flood Authority.
Second, in the 2011 Regular Legislative Session, the Legislature passed Act 363, which amended and reenacted a portion of La.R.S. 38:330.12. In particular, the Legislature amended La.R.S. 38:330.12(B)(2) to provide that a percentage of any non-flood asset property sale proceeds are to be used to satisfy a December 11, 2000, judgment against the Orleans Levee District.[9] Although the entire text of La.R.S. 38:330.12 was not included or otherwise addressed, at least the amended portion was reenacted by Act 363. In light of the subsequent enactment of Act 363, any interpretation of Act 1014 that would provide for the subsequent wholesale repeal of La.R.S. 38:330.12 would leave the Orleans Levee District and the judgment debtors only a six month window of opportunity to satisfy the judgment in whole or in part from the sale of any non-flood assets, thus leading to an absurd result, a result that should be avoided if a reasonable interpretation of the statute could conclude otherwise.[10]
Thus, it is the opinion of this office that Act 363 amendment of La.R.S. 38:330.12, providing for the payments of the aforementioned judgment was not intended to expire on January 1, 2012. Furthermore, we find that a repeal of the entirety of La.R.S. 38:330.12 would also remove key portions of the original statutory structure established in 2006, which dictates the governance of the non-flood *Page 7 
assets without providing an adequate explanation or supplement for future governance.[11] Therefore, it is the opinion of this office that the Legislature did not intend to repeal La.R.S. 38:330.12, but instead, intended for it to be effective on January 1, 2012, in the form reenacted and amended by Act 1014 and by Act 363.
Considering the opinion of this office that La.R.S. 38:330.12 remains in effect, it is clear that ownership of the Lakefront Airport has not been changed or compromised by enactment of Act 1014 or Act 363 and remains with the Orleans Levee District on January 12, 2012.
Did the State of Louisiana intend to relinquish its authority,rights, and powers to carry out its obligations to the United Statesunder grant assurances given in return for federally fundedimprovements at Lakefront Airport?
The State of Louisiana did not intend to, nor did it accomplish such a result. Regardless of the changes made to La.R.S. 38:330.12 and La.R.S. 38:330.12.1, levee boards are statutorily bound to comply with any previous federal contract or grant requirements prior to selling any property which it owns. La.R.S. 38:320 states in pertinent part:
 When any levee board or levee and drainage board desires to sell or lease any lands which it owns, the board shall comply with the advertising and bid requirements contained in R.S. 41:131 et seq., R.S. 41:1212 et seq., or R.S. 41:1261 et seq., provided the aforesaid Sections do not preclude compliance with any federal contract or grant agreement or any federal laws, rules, or regulations within the area of any airport. (emphasis added)
Therefore, due to the existing obligations between the Non-Flood Authority, the OLD, and the FAA, the Lakefront Airport cannot be sold without first complying with the requirements of programs such as the AIP.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office. *Page 8 
 Sincerely yours, JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:__________________________ STEVEN B. "BEAUX" JONES Assistant Attorney General
 JDC/SBJ
[1] La.Const. (1921), Art. XVI, § 7 (as amended).
[2] ". . . Except that for purposes of the Orleans Levee District, any such facilities or improvement shall continue to be owned by the Orleans Levee District." La.R.S. 38:330.12.
[3] We note that the current law under Act 1014 and Act 363 does not change the previously-expressed position in a December 29, 2006, letter from this office to the FAA, in which we stated,
 . . . ownership of the Lakefront Airport remains with the Orleans Levee District. Effective January 1, 2007, the non-flood assets of the Orleans Levee District, including the airport, will be managed and controlled by the DOA [now Non-Flood Authority] as the successor to the levee board. Since the airport is a non-flood related asset, the DOA [now Non-Flood Authority] has legal authority to sign a sponsor agreement with the FAA in its capacity as successor to the Orleans Levee Board.
This opinion is also consistent with the decision in Guste v.Board of Commissioners of the Orleans Levee District,456 So. 2d 605 (La. 1984). Letter from Nicholas Gachassin, Jr., First Assistant Attorney General, Louisiana Department of Justice, to Andy Velayos, Lead Program Manager, FAA (Dec. 29, 2006) (On file with Louisiana Department of Justice.)
[4] La.R.S. 38:330.12.1 was enacted and La.R.S. 38:330.12 was reenacted by Act 1014.
[5] "This Section and the provisions confirming ownership of non-flood assets in the OLD ceases to be effective on January 1, 2012."
[6] emphasis added.
[7] All statutory provisions are to be given effect whenever possible. If acts can be reconciled by a fair and reasonable interpretation, such reconciliation must be done since the repeal of a statute by implication is not favored if there is any other reasonable construction. It is only where there is a direct and irreconcilable conflict that one may resort to such conflict-resolving rules such as the last enacted statute prevailing over the first enacted statute, or the more specific statute prevailing over the more general statute. City of New Orleans v.the Board of Supervisors of Elections,216 La. 116, 43 So.2d 237 (La. 1949); State in the Interest ofSapia, 397 So.2d 469 (La. 1981); Hilton v. Hilton,451 So.2d 90 (La. App. 3rd Cir. 1984); and La. Atty. Gen. Opinion Nos. 98-122, 88-195 and 87-459.
[8] For Example, Section 3 undoes the revision of R.S. 36:801.1(A) effected by Section 1; Section 4 undoes the placement of NFPAMA under DOTD effected by Sections 1 and 2; and Section 5 repeals R.S. 36:509(P), which was enacted by Section 1.
[9] The judgment is in the matter of Haspel and Davis, Millingand Planting, Co., Ltd., et al. vs. Board of LeveeCommissioners, Docket No. 31-357 of the Twenty-Fifth Judicial District Court Parish of Plaquemines.
[10] "In the construction of statutes, absurd results should be avoided, and when the literal construction would produce such a result, the letter of the law must give way to its spirit and the statute should be construed so as to produce a reasonable result."Cov v. Williams, 5 Mart. (N.S.) 139 (La. 1826); State v.Wiltz, 11 La.Ann. 439 (La. 1856), supra; City of Crowley v.Police Jury, 70 So. 487 (La. 1915); Bradley v.Swifty Co., 119 So. 37 (1928); Houghton v. Hall,148 So. 37 (La. 1933) supra; State ex rel. Porterie v. La. HighwayCommission, 154 So. 36 (La. 1935).
[11] There appears to be no indication in the legislative histories of Acts 1014 or 363 that the Legislature, by simply changing control and management from the Division of Administration to the newly created Non-Flood Authority, intended to change the general governance principles and rules as they relate to the control and management of the OLD non-flood assets, including defining non-flood assets and the procedure for the sale of such assets, providing directives that, subject to federal law and regulations and the state constitution, profits from the non-flood assets are to inure to the benefit of the levee district and setting out dictates against the non-flood governing authority impairing obligations, contracts, and outstanding claims and judgments of the Levee District. It is the opinion of this office that La.R.S. 38:330.12.1, by itself, does not provide the same general governance principles and must act in concert with La.R.S. 38:330.12. One provision cannot stand without the other.